## KEEGAN, TRUSTEE, v. HAMILTON NATIONAL BANK.

### [No. 20,110. Filed June 30, 1904.]

BILLS AND NOTES.—*Makers.—Directors of Company Signing.*—Where the directors of a real estate, loan and investment company, by an agreement among themselves, unknown to anyone else, borrowed money for the use of such company upon their personal obligations, a loan made by a bank to such directors, though credited at such directors' request to such company, and though such bank knew such money was borrowed for such company, is the personal obligation of such directors, and not a loan to such company. *pp. 226.*

BANKRUPTCY.—*Preference.—Payment by Insolvent.*—Where the directors of an insolvent company borrow money at a bank, and one of them has such loan credited, unknown and unassented to by the others, on the books of such bank, to said company, and such money is paid by such company to another bank to which such directors owe money, such payee bank is not chargeable with having received a preference in violation of the national bankruptcy act (Act July, 1898, C. 541, sec. 60, (a.) and (b.), 30 stat. 562, U. S. Comp. Stat., p. 3445), since such company did not owe such payee bank, and since such company used money which was held in trust for such directors for the purpose of paying such bank. *pp. 227, 228.*

SAME.—*Trust Funds.—Distribution.*—Where an insolvent company holds trust funds, such funds can not be distributed, on an adjudication of bankruptcy, to such company's creditors. *pp. 228, 229.*

From Allen Circuit Court; *E. O'Rourke,* Judge.

Action by Hugh G. Keegan, trustee in bankruptcy of the J. F. Schell Loan & Investment Company, against the Hamilton National Bank, to recover $16,000, as an alleged preference.    Judgment for defendant and the plaintiff appeals.    *Affirmed.*

*R. S. Taylor*, for appellant.

*J. M. Barrett* and *S. L. Morris*, for appellee.

JORDAN, C. J.—Action below by appellant, as trustee in bankruptcy of the J. F. Schell Loan & Investment Company, against the Hamilton National Bank, to recover the sum of $16,000, alleged to have been received as an unlawful preference from the said company when it was in a state of insolvency.

The following is an epitome of the facts alleged in the complaint: Said J. F. Schell Loan & Investment Company, as a loan and investment company, was organized under the laws of this State, and was doing business at the city of Ft. Wayne. On March 30, 1899, the company was adjudged a bankrupt by the district court of the United States for the district of Indiana, and, on the 1st day of May following, appellant was elected trustee of the estate of said bankrupt, and duly qualified as such trustee and entered upon the discharge of the duties of his office. It is charged in the complaint that appellee bank loaned to the said J. F. Schell Loan & Investment Company, on several notes, signed only by the seven directors of said company, and not by the company itself, certain sums of money, aggregating $16,000; that the money so loaned was by appellee entered upon its books to the credit of said company. At the time the bank loaned the money, it is alleged that it knew that the same was obtained for the use of the company, and in fact the money borrowed by said directors was used by said J. F. Schell Loan & Investment Company in carrying on its business. It is averred that the notes in question were not paid at maturity, and thereupon a renewal note, in the sum of $16,000, was exe-

cuted by said directors, which was made due and payable forty days after the date thereof. To secure the payment of this latter note, the directors and makers thereof executed a mortgage upon their individual real estate situate in Allen county, Indiana. It is alleged that the J. F. Schell Loan & Investment Company paid said $16,000 note to appellee by a check drawn by it upon certain mentioned banks. At the time of the execution of the $16,000 note and mortgage, and at the time of the payment thereof, it is charged that the said company was insolvent, and that fact was known to the appellee and the parties who executed said mortgage, and that said payment was made with a view of protecting said directors, who were but the sureties of said company, and with the intention of giving the appellee a preference over the other creditors of said bankrupt company; that said payment was received by the appellee for the purpose of securing such a preference.

The appellee answered the complaint in three paragraphs, the first of which was the general denial. The second paragraph alleges facts to show that the J. F. Schell Loan & Investment Company, at the time it was adjudged to be a bankrupt and at all other times, was a moneyed corporation, and never was engaged in the business of manufacturing, trading, printing, publishing, or in mercantile pursuits, and therefore was not liable, as alleged, to be adjudged a bankrupt under and by virtue of the bankrupt laws of the United States. It is further charged that said district court of the United States had no jurisdiction or authority to adjudge said company a voluntary bankrupt, etc. The third paragraph averred the same facts set up in the second, and further charged that appellee never agreed to and never did loan any money to the said J. F. Schell Loan & Investment Company in pursuance of the agreement as alleged in the complaint, or otherwise. It is averred that all of the said sums of money represented by the notes set forth in the complaint were loaned to Jere-

miah F. Schell, Frederick W. Antrup, Jackson Valentine, Joseph Harding, Joseph L. Gruber, George W. Linden, and Hiram Porter, and that these persons alone executed said notes, and that the proceeds arising out of said loan were placed by appellee to the credit of the said company at the request of the makers of the notes in question, and that none of the notes was executed by said company. All of the notes were discounted by appellee bank, and the money was loaned by it to the makers and signers of said notes, relying, as it did, wholly on them for the payment thereof. They at the time resided in Allen county, and were the owners of real estate therein of the value of $100,000 and over. Appellee alleges that it had no knowledge of the use to which the proceeds of the notes in controversy were to be put, other than that it was directed to place the money to the credit of said company. The latter never paid any of the notes mentioned in the complaint. It is alleged that on February 21, 1899, the four notes referred to in the complaint were each past due, and thereupon the aforesaid parties and makers thereof executed to appellee, in the place and stead of said four notes, their note for $16,000, which was to bear interest and be due in forty-five days. The $16,000 note was, as shown, executed as a renewal of the said four notes, and to secure the payment thereof said makers executed a mortgage upon all of their real estate in said county, which was of the value of more than $100,000.. After the execution of the mortgage above mentioned the makers requested appellee not to record the same, for the reason that they were making arrangements to borrow the money elsewhere to pay the indebtedness which they owed appellee, and that they expected to pay the same within forty-five days, and therefore it was not necessary to record said mortgage immediately, as it might affect the credit of the makers in securing the money for the purpose of paying the note. The pleading then proceeds to show that the makers of said $16,000

note, for the express purpose of paying it, did, on or about March 10, 1899, borrow money sufficient for that purpose from the bank or banks therein mentioned, and thereupon paid the said renewal note in full to appellee, and that the said company in no manner or form paid any part of said $16,000 note, and that the assets of said company were in no way used or diminished by the payment thereof, but, on the contrary, the said J. F. Schell Loan & Investment Company and its creditors gained and profited by the money so loaned by appellee in the first instance to said directors, by reason of the fact that they turned the money over to the said company for its use and benefit. All the other allegations of appellant's complaint are specifically denied by the answer. Appellant replied by the general denial.

Upon the issues as joined between the parties, the court, upon the trial, at the request of appellant, made a special finding of facts, and stated conclusions of law thereon adversely to appellant.

Counsel for appellee insist that no question is presented by appellant's exception to the several conclusions of law upon the special finding, for the reason that said exceptions were not seasonably reserved. The record shows that on February 3, 1902, the court filed its special findings, with conclusions of law thereon. No exceptions thereto seem to have been taken by appellant until the 17th day of said month, at which time appellant excepted separately to each of the conclusions. Appellant's learned counsel earnestly urges that the question herein involved should be decided upon its merits, and not dismissed upon technical grounds. He asserts that the main question to be determined is, was there an unlawful preference, and that all others "are mere obstructions in the way of that question?"

Appellant's contention is that the cause of action, as alleged in the complaint, is based on subdivisions "a" and "b" of section sixty of the bankruptcy act passed by con-

gress in 1898, Act July 1, 1898, C. 541, 30 Stat. 562, U. S. Comp. Stat., 3445, which reads as follows: "Section 60. Preferred creditors. (a.) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than others of such creditors of the same class. (b.) If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

We pass over the argument of appellee's counsel in regard to the proposition that the exceptions to the conclusions of law were not timely reserved. Conceding, without deciding, this point in favor of appellant we proceed to consider the facts found by the court bearing upon the question of the unlawful preference upon which appellant rests his cause of action. The special finding of facts is along the lines and in support of those averred in appellee's answer. Upon no view of the facts as found by the court can it be said that they sustain appellant's complaint, but, on the contrary, there is a decided variance between the material facts set out in the complaint, and those disclosed by the special finding.

Eliminating the evidentiary facts embraced in the finding, and passing over others which are not material to what we deem the primary question in this case, the following may be said, in substance, at least, to be the facts exhibited by the special findings: The J. F. Schell Loan & Investment Company was incorporated under the laws of the

State of Indiana, on the 19th day of December, 1895, with a capital stock of $5,000, which stock was subsequently increased to $50,000. The objects of said company, as stated in its articles of association, were to buy and sell state, county, municipal, and other bonds; to borrow and loan money; buy and sell promissory notes, bills of exchange, etc. The defendant was at the time the loans of money were made as hereinafter stated, and still is, a national bank, organized under the national bank laws of the United States, located at, and doing business in, the city of Ft. Wayne, Indiana. J. F. Schell became the president of said company at the time of its organization, and continued to serve in that capacity until the 9th day of March, 1899, when he resigned. Prior to April, 1898, and until the 3d day of April, 1899, said Schell, together with Messrs. Antrup, Valentine, Harding, Gruber, Linden, and Porter, were the directors of said company. Before the execution of the several notes hereinafter mentioned, it was agreed, for a valuable consideration paid and to be paid, by and between said persons and the said J. F. Schell Loan & Investment Company, that they would indorse as sureties for the company, and would also borrow money for it upon their own notes and obligations. Of this agreement the defendant had no notice or knowledge, and the same was kept a secret between the company and its said directors. On the 24th day of October, 1898, said Schell, Antrup, Valentine, Harding, Gruber, Linden, and Porter applied to the defendant bank for a loan of $9,000, and thereupon the defendant did loan that sum of money to the aforesaid persons, and they executed two promissory notes to the bank as evidence of said loan—one note for $4,000, payable sixty days after date, and one for $5,000, due ninety days after date—each bearing seven per cent. interest. Upon receiving said loan from the defendant, at the special instance and request of said Schell, Harding and Porter, who, as it appears, delivered the notes so executed to the

defendant, the latter credited on its books the proceeds of the loan to the J. F. Schell Loan & Investment Company, which proceeds were subsequently checked out and used by the company in conducting its business. On the 29th day of October, 1898, said Schell, Antrup, Valentine, Harding, Gruber, Linden, and Porter, applied to the defendant for a further loan of $7,000, which they secured, and thereupon they executed to defendant two promissory notes —one for $4,000, payable in thirty days from date, and the other for $3,000, payable ninety days from date—each bearing interest at the rate of seven per cent.; and the money obtained by this loan was, at the special request and direction of said Schell, Harding, and Porter, who delivered the notes to the defendant, credited by the latter on its books to the J. F. Schell Loan & Investment Company, and was subsequently used by the latter in its business. The court finds that at the time of making the aforesaid loans evidenced by the four notes as mentioned, none of which was executed by said company, the defendant knew that the makers of said notes were borrowing the money for the use of the J. F. Schell Loan & Investment Company. On the 21st day of February, 1899, the four notes in question, the principal sum of which, in the aggregate, was $16,000, were due and unpaid. On the latter date the makers of these notes applied to the defendant bank for an extension of the time of payment, which the defendant granted, and thereupon the said makers, as a renewal of the four notes, executed to the defendant their joint and several note for the sum of $16,000, due and payable in forty days after date, bearing interest at seven per cent. On the same day, for the purpose of securing said note, the makers thereof executed to the defendant a mortgage upon real estate owned by them, and situated in Allen county, Indiana, which was of the value of $50,000, over and above all incumbrances thereon. Upon the execution of this renewal note, and the mortgage to secure the same,

the bank surrendered to the said makers the four notes executed by them as aforesaid stated.

The defendant never agreed to, and never did, loan any money to the said J. F. Schell Loan & Investment Company, but refused to make such loans hereinbefore mentioned to said company. The said $16,000 note was not paid by said company, nor was it paid out of the funds or money owned by the company or belonging to it; but the amount thereof was paid to the defendant by the makers thereof out of money borrowed by them from the Colonial National Bank of Cleveland, Ohio, for the express purpose of paying said note. At the time of the payment of said $16,000, as heretofore stated, the J. F. Schell Loan & Investment Company was insolvent; but, as the court finds, neither said company nor any of its officers contemplated insolvency, or any proceedings in bankruptcy, but believed the company could and would continue in business. The defendant never regarded said company indebted to it, and never made any investigation or inquiries concerning its financial condition, and, at the time of receiving payment of the $16,000 note as aforesaid, defendant had no notice or knowledge that the company was insolvent, and had no knowledge or reason to believe that it was thereby receiving a preference over any of the said company's creditors. On the 3d day of April, 1899, a petition in bankruptcy was pending against the said J. F. Schell Loan & Investment Company in the United States District Court for the State of Indiana, and the said company appeared to said proceedings, and, with its consent, it was adjudged by said court to be a bankrupt; and appellant thereafter was elected by the creditors of the company as trustee in bankruptcy, and on the 6th day of May he duly qualified as such trustee. No claim has been filed or made against the said company, or with the said trustee, or otherwise, against the assets of said company, by either the defendant or the Colonial National Bank of Cleveland, or any of the makers of

the said notes in question, or any other person or corporation, for or on account of any of the loans in controversy, or the payment thereof made as herein mentioned.

Upon the facts as found, the court, among others, stated substantially the following conclusions of law: (1) That the said notes executed by Schell, Antrup, and the other persons mentioned, were each the individual obligation and evidence of the indebtedness of the said makers, and not the obligation or evidence of indebtedness of the said J. F. Schell Loan & Investment Company; (2) that by the payment of the $16,000 note to the defendant, as found, the latter did not secure or receive an unlawful preference from the said J. F. Schell Loan & Investment Company out of its property, over other creditors of said company, or in violation of the bankrupt law; (3) that the plaintiff is not entitled to recover anything from the defendant in this action.

Appellant's counsel concedes that if certain findings of the court can be regarded as findings of fact they will justify the conclusion that the law is with the defendant, and entitle it to a judgment. The findings referred to show (1) that appellee bank never agreed to and never did loan any money to the J. F. Schell Loan & Investment Company; (2) that the $16,000 note was neither paid by that company, nor out of any funds or money owned by or belonging to it, but was paid out of funds borrowed by the makers of the note for that express purpose; (3) that at the time of the payment of the note in question the company was insolvent, but this fact was not known to appellee, or had it any reason to believe that in the payment of said note it was receiving a preference over the company's creditors. It is insisted, however, that these findings are not sustained by the evidence, and that the court therefore erred in denying the motion for a new trial wherein it was assigned, among other grounds, that these

findings and others were not sustained by sufficient evidence. Appellant has no just reason for complaining in regard to the ruling denying his motion for a new trial, for the evidence in the record sufficiently sustains and warrants the findings which counsel admit authorize a conclusion in favor of appellee. Certainly, appellant can not demand a recovery over the facts shown by the first and second findings as above enumerated. The facts' disclosed by these findings render the question of the insolvency of the company at the time of the payment of the note, and the knowledge of that fact on the part of appellee, immaterial. The findings clearly show that the relation of creditor and debtor did not exist between appellee bank and the J. F. Schell Loan & Investment Company. As the $16,000 note in controversy was not an indebtedness of the company in favor of appellee bank, it is manifest that the latter could not have coerced the payment thereof from the company. If the loan in question was not made to the J. F. Schell Loan & Investment Company, nor paid by it out of its money or funds, certainly, under the circumstances, the case would not fall within the provisions of said section of the bankrupt act, and appellant could not maintain this action to recover on the ground of an unlawful preference. If appellee was not a creditor of the company, certainly it could not be preferred as such, within the meaning of that act, the very design of which is to secure an equal distribution of the assets, or property, of an insolvent debtor among his creditors. *Toof* v. *Martin* (1871), 13 Wall. 40, 20 L. Ed. 481.

Appellant's counsel places some stress upon the fact that the money secured as a loan from appellee by the makers of the notes in question was, at their direction, placed to the credit of the J. F. Schell Loan & Investment Company, but that fact in no manner served to create the relation of debtor and creditor between appellee and the company.

In the case of *Wilcoxon* v. *City of Bluffton* (1899), 153
Ind. 267, we said: "It is certainly manifest that if A
secures a loan of money from B and executes his note or
bond to the latter for the same, and then turns over the
money so borrowed to C, the indebtedness evidenced by the
note or bond is A's, and not C's. A debt in a general sense
arises out of an express or implied promise made by one
person to another to pay a sum of money."

In *Quill* v. *City of Indianapolis* (1890), 124 Ind. 292,
7 L. R. A. 681, Mitchell, J., speaking for the court, said:
"An indebtedness can not arise unless there is either a legal,
equitable or moral obligation to pay a sum of money to
another, who occupies the relation of creditor, and who has
a legal or moral right to call upon or constrain the debtor
to pay." That the directors of the J. F. Schell Loan &
Investment Company had the legal right to borrow money
from the appellee on their own credit, and then turn it
over to the use of the company, must be conceded.

Counsel further contends that, by a finding of the court
not hereinbefore set out, it is shown that the money applied
to the payment of the renewal note belonged to the J. F.
Schell Loan & Investment Company. The finding in ques-
tion discloses that in February, 1899, the makers of the
$16,000 renewal note arranged and agreed among them-
selves to borrow $25,000 from the Colonial National Bank
of Cleveland, Ohio. The proceeds of this loan, when ob-
tained, were to be first applied to the payment and satis-
faction of said note. In furtherance of this agreeement
and arrangement, in March following, they executed a note
dated on the 10th of that month, for $25,000, and made
it payable to that bank at its office in the city of Cleveland,
four months after date, with six per cent. interest. On
the 10th of March, 1899, it is shown that Schell and
Gruber, two of the makers, negotiated this note to the
Colonial National Bank, and obtained a loan from the
latter for $25,000. Schell, in the absence of Gruber, and

without his consent or agreement, and in the absence of the other makers of the note, and without their consent or agreement, as a mere matter of convenience, procured a draft to be drawn by the Colonial National Bank for $10,000, payable to the order of the J. F. Schell Loan & Investment Company, as a part of the proceeds of the loan obtained; and he directed that the remainder thereof should, as a matter of convenience, be placed upon the books of the Colonial National Bank to the credit of said company. None of the makers, other than he, ever consented or agreed that any part of the proceeds of the loan so secured should be paid to, or deposited to the credit of, that company, or that any part of such proceeds should ever be used or applied to any other purpose than first to the payment of the $16,000 note held against them by appellee. It is found that the J. F. Schell Loan & Investment Company received the proceeds of the loan with full notice and knowledge that the money did not belong to the company, and that it had been borrowed by the makers for the express purpose of first being applied in payment of the note in question. The treasurer of the company was informed of the purpose for which the money had been deposited to the company's credit, and that it was not for the use of the company, and he was directed to apply the money, so far as necessary, to the payment of the $16,000 note. This he accordingly did, by drawing checks against the deposit in payment of the note in controversy.

It is contended that these facts show that the note in controversy was paid out of money belonging to the company. Counsel argues that as the note was paid by checks drawn by the J. F. Schell Loan & Investment Company, upon a fund which had been placed to its credit on the books of the Colonial National Bank, therefore, under the circumstances, such payment must be considered as made by the company. But the facts do not sustain this con-

tention. The money, under the circumstances, in fact did not belong to the company. It was borrowed by those who were liable upon the $16,000 note held by appellee on their own credit, for the express purpose of being applied first to the payment of that particular note. It is true that Schell, one of the borrowers, without the knowledge or consent of his associates, as a matter of convenience, as shown, procured a draft to be drawn in favor of said company for $10,000, as part of the proceeds of the loan, and directed that the remainder thereof be deposited to the credit of the company. The latter is shown to have received the money credited to it, with the full notice and knowledge that the money did not belong to it, but belonged to the makers of the note in dispute, and that it was to be used for the express purpose of paying that note.

The law has regard for substance, rather than "shades or shadows," and the mere fact that the money, under the circumstances, was credited to the company did not make it the funds of the company, and liable to be distributed among its creditors in the event of its being adjudicated a bankrupt. The court finds that Schell deposited the money secured by the loan to the credit of the company as a mere matter of convenience, and not for its use. Under the circumstances, the funds in question in the hands of the company were impressed with a trust, and the law recognizes that money so held by a person adjudicated to be a bankrupt is not subject to distribution among his creditors.

Without further comments, we conclude that the record in this appeal presents no reversible error, and the judgment is therefore affirmed.