MASON v. NATIONAL HERKIMER COUNTY BANK OF LITTLE FALLS.

(Circuit Court of Appeals, Second Circuit. July 21, 1909.)

No. 279.

**1. BANKRUPTCY (§ 159*)—PREFERENCES—ELEMENTS.**

It is essential to a voidable preference in bankruptcy that the bankrupt shall have transferred some portion of his own property to the creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 247; Dec. Dig. § 159.*]

**2. BANKRUPTCY (§ 164*)—VOIDABLE PREFERENCE—PAYMENT BY INDORSER.**

The S. Company in January received a bankrupt's note in payment for certain machinery and merchandise, which the S. Company indorsed and discounted at defendant bank. The note was renewed from time to time, being secured by the S. Company's collateral, in which the bankrupt had no interest until on September 26, 1903, before the maturity of the last renewal, the S. Company paid the note to the bank from its own funds, received back its collateral, and charged the amount to the bankrupt's account; the S. Company being then indebted to the bankrupt on such account in a sum in excess of the amount of the note, and within four months the adjudication was entered. *Held*, that such facts did not justify an inference that the note was paid by the bankrupt, or with its property, and hence the payment of the note by the S. Company was not a voidable preference as to the bank.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. § 164.*]

**3. BANKRUPTCY (§ 154*)—SET-OFF—PURCHASE OF CLAIM BY CREDITOR.**

Bankr. Act July 1, 1898, c. 541, § 68b, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), provides that a set-off or counterclaim shall not be allowed in favor of any debtor of a bankrupt which was purchased by or transferred to him after the filing of the petition or within four months before such filing with a view to such use, and with knowledge or notice that the bankrupt was insolvent, or had committed an act of bankruptcy. *Held*, that where an indorser of a bankrupt's paper took it up within four months prior to bankruptcy, knowing that the bankrupt was insolvent, and for the purpose of setting it off against its debt to the bankrupt, it was not available as a set-off as against the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 454; Dec. Dig. § 154.*]

**4. BANKRUPTCY (§ 164*)—PAYMENT OF DEBTS—EVASION OF ACT.**

Where an indorser of a bankrupt's paper, well secured by the indorser's collateral, paid the paper to the bank, and charged the amount against its debt on open account to the bankrupt, equity did not require that the payment be held to constitute a preference to the bank by the bankrupt on the theory that the transaction was an evasion of the act.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. § 164.*]

Appeal from the District Court of the United States for the Northern District of New York.

Action by Charles B. Mason, as trustee in bankruptcy of the National Herkimer County Bank of Little Falls. From a decree of the District Court (163 Fed. 920) for complainant, defendant appeals. Reversed and remanded, with instructions to dismiss.

The complainant is the trustee in bankruptcy of the Newport Knitting Company, a corporation under the laws of the state of New York, and lately engaged in the business of manufacturing knit goods at Newport, Herkimer coun-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
172 F.—34

ty, N. Y. The defendant is a national bank, located and doing business at Little Falls in said county, and some 22 miles from Newport. The Titus Sheard Company is a New York corporation, which, like the Newport Company, was engaged in the business of manufacturing knit goods, and was located at said Little Falls. The Sheard Company and the Newport Company, while maintaining distinct and separate corporate organizations, were closely associated in business, and had to some extent the same stockholders and officers. Neither corporation, however, owned any shares in the other, and it does not appear that the same persons owned controlling interests in both corporations. The Sheard Company was a customer of the defendant bank, kept its deposit account with it, and discounted its own paper and that received from persons dealing with it. The Newport Company was never a customer of the defendant bank.

On January 7, 1901, the Newport Company gave the Sheard Company its four months' note for $5,773.05 in payment for certain machinery and merchandise purchased. The Sheard Company indorsed this note, and discounted it for its own benefit at the defendant bank. The note was reduced by partial payments to $5,000, and was renewed with the same indorsement from time to time until May 11, 1903, when it was again renewed for four months so as to mature September 11, 1903. On August 22, 1903, however, and before the maturity of said note, it was taken up through the action of the Sheard Company by a new three months' note likewise indorsed by said Sheard Company and secured by collateral deposited by said company. The collateral consisted of accounts receivable amounting to $6,300 belonging to the Sheard Company, and in which the Newport Company—the maker of the note—had no interest. On September 26, 1903, and before the maturity of the last-mentioned note, the Sheard Company paid $4,953.33 to the defendant bank, being the amount of said note—$5,000—less unearned interest, took up the said note, and received back its collateral. The Sheard Company made this payment upon its own initiative and in its own behalf by cheque drawn upon funds belonging wholly to it. At the time when the Sheard Company paid and took up said note and collateral, it was indebted to the Newport Company upon open account in a sum in excess of the amount of said note. Upon taking up said note it credited the amount paid—$4,953.33—to itself upon its account with the Newport Company. This was done with the knowledge and approval of the Newport Company, but not—so far as appears upon the record—with the knowledge of the defendant. In August, 1903, when the Sheard Company substituted the three months' collateral note in place of the existing four months' note which was merely indorsed, it was otherwise largely indebted to the defendant bank upon its own and indorsed paper, and at that time made an agreement with the defendant whereby it practically pledged all its property as security for such indebtedness. On January 23, 1904, and within four months after the taking up of the last note by the Sheard Company as aforesaid, the Newport Company was adjudged a bankrupt.

The District Court, in accordance with the claims of complainant, held that the last-mentioned transaction amounted to a preference under section 60 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), which, so far as is relevant here, reads as follows: "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of another person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Myron G. Bronner (Albert M. Mills, of counsel), for appellant. Cookinham & Cookinham, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The one thing absolutely essential to a preference is that the bankrupt transfer

some portion of his property to the creditor. If the creditor receive none of the bankrupt's property, there is no preference. And that is the primary difficulty with the complainant's case. The defendant bank received no property or money of the Newport Company. The Sheard Company as indorser of the note took up and paid its own funds therefor—funds in which the Newport Company had no interest whatever. It is true that the Sheard Company at the time it paid the note was indebted to the Newport Company, but that in no sense made its funds the property of the latter. An unsecured creditor has no interest in his debtor's property until he has sequestered it. The money which the defendant received belonged to the Sheard Company, and not to the bankrupt. It follows, then, that there was no preference unless that which was actually done can be treated as the equivalent for something else. And that is the theory of the District Court's decision. It is pointed out that, if the Newport Company had collected its claim from the Sheard Company and had itself paid the note, there would have been a transfer from the Newport Company to the bank. And it is said that it was merely a short cut for the Sheard Company to pay the note and charge the amount paid upon its account against the Newport Company—that the effect of the two transactions was the same. There would be much force in this argument if the Sheard Company stood in the transaction merely as a debtor of the Newport Company. It may well be that when a debtor with the approval of his creditor takes up the latter's note at a bank, and offsets the amount paid upon his debt, the payment to the bank will be treated as having been made by the creditor; the debtor being really his agent in the transaction. But that was not the situation here. The Sheard Company was the indorser of the note, and had pledged its own property as security therefor. In taking up the note and collateral it acted in its own behalf, and in no sense as the agent of the Newport Company. The note was not discharged. The Sheard Company as against the Newport Company became the holder instead of the bank. Upon no permissible theory in law or equity can it be said that the note was paid by the Newport Company.

But it is further urged that the effect of the transaction was to appropriate certain assets of the Newport Company, to wit, its demand against the Sheard Company, to the payment of this note to the exclusion of other creditors. As already pointed out, however, this ultimate result would not make the transaction a preference; the Sheard Company alone dealing with the bank and acting in its own interest. But it cannot be conceded that the result claimed would follow. If the Sheard Company, knowing the Newport Company to be insolvent, acquired the note with a view to using it as a set-off or counterclaim against its debt, it could not legally do so. Bankruptcy Law, § 68b. And, if the Sheard Company could not offset the note against the account of the Newport Company, there was no transfer or appropriation of such account, and much less a preference. The debt could still be collected by the trustee of the Newport Company and used for the benefit of all the creditors.

Finally, it is contended, in substance, that equity requires that the decree be permitted to stand—that the whole transaction was an eva-

sion of the bankruptcy act. We see no basis for this contention. The note which was paid was apparently well secured by the indorser's collateral. There was no reason why it should not have been paid in full. The bank received no more than it was entitled to without looking to the bankrupt's property at all. It cannot be said that equity requires us to affirm a decree compelling a bank to pay back to the trustee of the maker of a note money received from an indorser, and upon the payment of which it surrendered collateral deposited by such indorser.

The decree of the District Court is reversed, with costs, and the cause is remanded, with instructions to dismiss the bill, with costs.