**103**

CATCHINGS v. CHATHAM NAT. BANK.

(Circuit Court of Appeals, Second Circuit. July 26, 1910.)

No. 312.

BANKRUPTCY (§ 167*)—PREFERENCES.

    Where a partner borrowed money of a bank, the notes being signed by him and indorsed by him in the firm's name, payment of the notes to the bank by the firm within four months of the partner's bankruptcy did not constitute a preference to the bank; it not having received any of the bankrupt's property.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 282; Dec. Dig. § 167.*]

In Error to the District Court of the United States for the Southern District of New York.

Action by Waddill Catchings, trustee in bankruptcy of Max Scheuer, against the Chatham National Bank. There was a directed verdict for defendant, and plaintiff brings error. Affirmed.

This cause comes here upon a writ of error to review a judgment of the District Court, Southern District of New York, in favor of defendant in error who was defendant below. The action was brought to recover $16,000, which it was averred defendant had received from the bankrupt within the four months' period, defendant knowing at the time of the transfer that it was intended thereby to give a preference to said defendant. At the close of the testimony a verdict in favor of the defendant was directed by the court.

Theodore Price (Henry S. Dottenheim, of counsel), for plaintiff in error.

Steele & Otis (F. H. Edwards, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The facts are somewhat complicated, but, when they are fully stated, it will appear that the question presented is a simple one and has already been decided by this court.

Max Scheuer was petitioned in bankruptcy on January 9, 1906, having been insolvent for several months previously. From 1880 to 1892, he was a member of the firm of S. Scheuer & Sons, composed of his father and two of his brothers, Ralph and Isaac. In 1892 the father died and the three sons continued the business under the firm name. Max was the business man of the firm from a financial standpoint, who arranged for loans and dealt with the banks. In 1892, before his father's death, he negotiated a loan from the bank on his own note for $750, indorsing it in the name of the firm because the bank officers told him they required two names on all discounted paper. The firm and Max had separate accounts, and he deposited the proceeds in his own account. The loan was from time to time renewed, and was gradually increased until in 1903 the loans aggregated $16,000, at which sum they continued. The proceeds were deposited in Max's account, and as notes became due he paid them with his personal checks. Part of the money loaned, Max informed the bank, was for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his personal use and part for assessments on real estate owned jointly by himself and his father and later by him and his father's heirs. In December, 1905, the loan was represented by four notes of $4,000, each falling due January 8th, February 19th, March 12th, and April 11th, respectively, all signed by Max, and all indorsed by S. Scheuer & Sons. Besides this loan to Max the bank was creditor of S. Scheuer & Sons to the amount of $60,000. The evidence seems to indicate that part of that at least was on the notes of the firm, indorsed by one or other of the partners, but it may be that some part was represented by paper of customers of the firm which they had discounted. It is not material how it accrued. The amount of indebtedness is conceded.

Toward the end of December, 1905, Ralph informed the president of the bank that Max had been guilty of irregularities, that he had been stealing from the firm on a large scale and it was necessary to break with him, that they no longer wanted to continue in business with him. He also told the president that the real estate his father held had been sold. He asked that the direct indebtedness of the firm should be renewed, so that they could be continued in business. This the bank's officer agreed to do and to advance further loans, and witness said that he would assume the indebtedness represented by Max's notes with the firm's indorsements. Subsequently as each note came due it was paid by the firm with its own check.

On January 4, 1906, a written agreement was entered into between Max and Ralph whereby the former sold, assigned, and set over all his right, title, and interest in all the assets of the partnership and the latter agreed to pay therefor the sum of $16,000 by assuming the payment of the four notes.

In Mason v. National Herkimer Co. Bank, 172 Fed. 529, 97 C. C. A. 155, we had under consideration the question as to the effect of payment of a bankrupt's note by the indorser who upon such payment credits the amount against an indebtedness due by such indorser to the bankrupt. The proposition was contended for that the bank has thereby received a preference. We held that:

"The one thing absolutely essential to a preference is that the bankrupt transfer some portion of his property to the creditor. If the creditor receive none of the bankrupt's property, there is no preference. And that is the primary difficulty with the complainant's case. The defendant bank received no property or money of the Newport Company. The Sheard Company as indorser of the note took it up and paid its own funds therefor."

This ruling is controlling of the case at bar. A distinction is sought to be made by suggesting that the firm was not liable on these notes; but we are not satisfied that such is the case. The signature of the firm's name was by the partner who had charge of the financial business of the concern, the same partner who signed the firm's name as maker on the notes which one or other of the partners indorsed. The bank was not chargeable with knowledge of the dealings of the partners between themselves, or with what arrangements they might have made as to how money should be borrowed by discount of notes and how the proceeds of such notes should be distributed. Apparently when the bank and Ralph made their arrangements the former could

have obtained judgment against the firm if it had defaulted on the notes which bore its indorsement, and nothing in the record satisfies us that such appearance was deceitful.

The judgment is affirmed.