## In re STAR SPRING BED CO.

(District Court, D. New Jersey. August 14, 1917.)

BANKRUPTCY ⟪165(1)⟫—CHECK TO BANKRUPT—UNSUCCESSFUL ATTEMPT TO STOP PAYMENT—RIGHT OF RECOVERY—PREFERENCE.

M., who had given notes for the accommodation of S., which had not matured, but exceeded M.'s indebtedness to S. for merchandise, sent a check for part of the indebtedness, payment of which, on learning of S.'s bankruptcy, he attempted to stop, unsuccessfully, because of failure of the bank, his agent, to carry out his instructions. *Held,* that such attempt did not deprive bankrupt's estate of right to the proceeds, so that the bank, which stands in no better position than M., cannot recover the same, as a return thereof to M. would result in an unlawful preference.

In Bankruptcy. In the matter of Star Spring Bed Company, bankrupt. On review of the master's findings, denying the claim of the Security Bank of New York for a return of the sum of $879.42, the proceeds of a check drawn on said bank to the order of the said bankrupt company and paid to the receiver. Claim disallowed.

George P. Breckenridge, of New York City, for Security Bank of New York.

Rosenberg, Levis & Ball, of New York City (Nathan Bilder, of Newark, N. J., of counsel), for trustee.

RELLSTAB, District Judge. The Fourteenth Street Bank, now the Security Bank of New York, instituted proceedings before the referee in bankruptcy to recover from the receiver of the Star Spring Bed Company, bankrupt, the sum of $879.42, the proceeds of a check dated April 18, 1911, drawn by the Superior Metal Bed Company on said bank to the order of said Star Company. This check, deposited in the mail on that date, was received by the latter company on April 19, 1911, on which day it, with other assets, was turned over to the said receiver, who had been appointed by this court in involuntary bankruptcy proceedings instituted against said Star Company on the last-named date.

On the same day the Superior Company, having learned of the financial troubles of the Star Company, notified the bank not to pay said check, and the bankrupt not to use it. In a letter of the same date, viz., April 19th, sent by drawer to the bankrupt, the latter was requested to return the check and a note for $755, which accompanied it, "as (in the language of the letter) same are incorrect and for that reason are of no use." On April 20th the receiver, by telephone, inquired of the drawer concerning said letter, and was told, in substance, that the check and note were incorrect and should be returned, as the bankrupt owed the drawer money, and that it had stopped payment on the check.

On April 21st the receiver deposited the check to his credit in the Union National Bank, of Newark, N. J., and on April 24th the Fourteenth Street Bank inadvertently paid it and charged it against the account of the drawer. Subsequently this bank reimbursed the drawer and instituted these proceedings now under review, claiming that said

check was paid by mistake. The receiver offered no evidence, other than that the check was put to his credit by the Newark Bank. The referee, though reporting a summary of the evidence, made no findings of fact, deeming the case of National Bank of New Jersey v. Berrall, 70 N. J. Law, 757, 58 Atl. 189, 66 L. R. A. 599, 103 Am. St. Rep. 821, 1 Ann. Cas. 630 to be "on all fours" and controlling, and that the Fourteenth Street Bank, on its own showing, could not recover.

On a review of the referee's decision, this court pointed out that the present case differed from the New Jersey case in the important respects that this was an equitable proceeding, involving the distribution of a bankrupt's estate (a trust fund) among those ultimately entitled to it, wherein the doctrine of privity pronounced in the cited case —an action at law—had no application, and that the receiver deposited the check after the drawer had notified him that payment had been stopped, for lack of consideration. The trustee thereupon asserting that the check was in fact given in part payment of a debt, the cause was sent to a special master (the said referee being then about to retire from office) to take testimony on that subject, as well as any other that bore on the commercial relationship between the bankrupt and the drawer, contemporaneous with the giving of the check. The special master found and certified, inter, alia, that this check was given by the drawer in part payment for merchandise purchased from the Star Company between the 15th and 31st of March, 1911. This finding is amply supported by the evidence.

This shows that the officers and managers of the bankrupt held shares of the capital stock of the Superior Company; that the latter had the exclusive sale of the bankrupt's manufacture in the state of New York and parts of New Jersey; that the relations between these two companies were closer and more confidential than usually subsisted between manufacturers and jobbers; that the Superior Company, in addition to making semimonthly payments for merchandise bought, in accordance with the agreement between them, occasionally loaned its credit to the bankrupt, by making and delivering to it its promissory notes; and that on its books of account the merchandise and loan transactions were kept separate, styled, respectively, "Merchandise Account" and "Advance Account"; that on April 18, 1911, when this check was sent to the Star Company, the Superior Company was indebted to it for merchandise bought the month previous to an amount exceeding that of the check, which indebtedness, according to the said agreement, was payable on that date; that at that time unmatured notes theretofore given by the Superior Company for the accommodation of the bankrupt, aggregating a sum in excess of said indebtedness, were outstanding. It is conceded that, had the drawer declined to give this check, after the maturity of said notes it could have offset any amount it would have paid on account thereof against any indebtedness it owed to the bankrupt. However, on the request of the Star Company, it chose to pay for the merchandise in accordance with its agreement, notwithstanding its liability on the accommodation notes, and credited itself with said payment in the said merchandise account. If, instead of giving this check, it had at that time paid the amount thereof in cash, or if cash forwarded by a messenger for a like pur-

pose had reached the Star Company before being overtaken by another messenger subsequently started with instructions to prevent its delivery, or if this check had been paid by the bank, without any effort on the drawer's part to stop payment thereof, the moneys thus obtained would have become part of the bankrupt's assets. If, after such a payment, the bankrupt had returned it to the Superior Company, on the latter's request, in circumstances such as controlled the demand made for the return of this check, the cash thus returned would have amounted to an unlawful preference, despite the fact that, even after such crediting of cash to the bankrupt, the Superior Company would still have been its creditor.

That the drawer made an unsuccessful attempt to stop payment of this check does not change the legal effect of the transaction. The drawer made the bank its agent to prevent its payment, and merely because the bank failed to carry out its depositor's instructions gave the latter no claim for reimbursement against the bankrupt's estate. Its intention to make payment was not overcome by its subsequent intention to stop payment. To make such change of mind effective, the latter intention would have to be carried out. Such consummation failed through the neglect of its own agent. In Mason v. National Herkimer County Bank of Little Falls (C. C. A. 2) 172 Fed. 529, 97 C. C. A. 155, affirmed 225 U. S. 178, 32 Sup. Ct. 633, 56 L. Ed. 1042, it was said that a payee of a bankrupt's note given for merchandise purchased, who, after discounting it, and with knowledge of the bankrupt's insolvency, took it up before maturity for the purpose of setting it off against its debt to the bankrupt, would not be permitted to do so against the latter's trustee in bankruptcy. In the Supreme Court this statement was unqualifiedly approved; Mr. Justice Hughes saying that the allowance of such a set-off would diminish the bankrupt's estate and be in violation of section 68b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 565 [Comp. St. 1916, § 9652]), and that the indebtedness of said payee could still be collected by the trustee.

If the payee of a discounted note, who, by indorsement, has become secondarily liable to the holder, will not be permitted, in bankruptcy proceedings, to offset the amount thereof against his indebtedness to the maker, because, with knowledge of the maker's insolvency, he paid the note before maturity for the purpose of doing so, a fortiori, one who makes an unsuccessful attempt to stop payment of a check given by him for a debt will not be permitted to recover from the trustee the amount of the check, when such attempt to stop payment was made after he had notice that the payee was insolvent and had reasonable cause to believe that the nonpayment of the check would give him a preference over the other creditors of said insolvent of the same class. That the drawer of the check in question had such notice and reasonable cause to believe is established by the evidence, and that such a preference would result if the drawer were permitted to treat said check as not paid cannot be successfully gainsaid. In such a case, while its debt to the bankrupt's estate would be increased, and the net amount of its claim against the estate, after offsetting said debt against the money paid by it on said notes, would be decreased, yet the

effect of such a stating of accounts would be to enable it to retain the full amount represented by the check to the prejudice of the other creditors. If, however, the check were treated as a payment on account of its indebtedness to the estate, the amount of such payment would inure to the benefit of all the creditors, and while the amount of the Superior Company's claim against the estate would be correspondingly increased, yet, like the other creditors, it would obtain only a percentage of such increase in the distribution of the assets. In the circumstances, the receiver was justified in insisting that the intended payment, begun by giving the Superior Company's check, should be carried out. The check was paid, and to allow the drawer, or the bank, which stands in no better position than the drawer, to recover from the receiver or trustee the amount of such payment, would result in an unwarranted depletion of the estate's assets, and work out an unlawful preference to the prejudice of the general creditors, and be in violation of section 60 of the Bankruptcy Act (Comp. St. 1916, § 9644).

The contention on the part of the bank that the trustee is estopped from showing that this check was in payment of merchandise purchased, inasmuch as the drawer—Superior Company—was allowed a claim against the bankrupt, is without merit. True, the claim of said company, as allowed, was less than as presented, the lesser amount being the result of a compromise effected between the attorney of the company and the attorney of the trustee; but there is nothing in the record to indicate that in this compromise the rights of the parties involved in the controversy over this check were under consideration. The claim of the bank for a return to it of the proceeds of said check and that of the Superior Company were represented by different counsel, occupied independent positions in the bankruptcy proceedings, and were so treated, respectively, by the claimant, trustee, and referee. It would be as persuasive to say that the bank's right to a recovery was lost, because of the compromise reached on the claim of the Superior Company, as to say that the trustee was estopped from contesting the bank's claim, because of said compromise. True, the absence of the amount of this check from the credit side of the Superior Company's account reduced the amount of the latter's claim, as presented to the trustee; but whether that company would have obtained a greater allowance in said compromise settlement, if said amount had been included, is not apparent, and of no moment here.

The right of the bank in this proceeding depends, not upon its having inadvertently paid the check after being notified by the drawer not to pay, but upon whether the Superior Company's attempt to stop payment of the check deprived the bankrupt's estate of the proceeds thereof. As this is decided in the negative, the claim of the bank is without merit, and is denied.