## FIRST NAT. BANK OF DANVILLE, ILL., v. PHALEN.
### No. 4819.

Circuit Court of Appeals, Seventh Circuit.

Dec. 8, 1932.

George F. Rearick and James A. Meeks, both of Danville, Ill., for appellant.

V. W. McIntire and O. M. Jones, both of Danville, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The trustee in bankruptcy of Adam Eaton brought suit at law to recover an alleged preferential payment of $3,300 made to the bank within four months of the bankruptcy. The bank held Adam's note for $7,500, whereon his brother Bert and one Pugh were sureties. On maturity, the bank insisted upon payment. Adam and Bert came to the bank March 5, 1930, and produced a check, payable to Bert, of the Northwestern Mutual Life Insurance Company for $2,264, indorsed on the back by Bert and Adam, and Bert there wrote his own check on his own funds in another bank for $736, payable to Adam and by him indorsed. These items, aggregating $3,000, were then turned over to the bank. Pugh paid the bank $300 to apply on the balance of the note. On the same day Adam gave Bert his note for $3,000, and a chattel mortgage on his property to secure its payment.

Jury was waived, and, on hearing the evidence, the court found in the bank's favor upon the $300 paid by Pugh, and against the bank for the $3,000 payment. It found that the $3,000 payment to the bank was made by Adam with money which he had borrowed from Bert, securing the loan by a note and chattel mortgage to Bert; that Adam was then insolvent; that by the payment to the bank it would receive a greater percentage of its debt than would other creditors in the same class; that the bank then knew, or had reason to believe, that Adam was insolvent; and that the payment would operate as a preference to the bank.

Adam's insolvency was conceded, and there was substantial evidence tending to show that the bank, at the time of receiving the payment, was aware of the insolvency.

The sureties on the bank's note were good, and the right of the bank to receive in payment money raised by the sureties cannot be questioned. That the money emanated from Bert is undisputed. He raised most of it on his own life insurance, and the check for the balance of the $3,000 was drawn on his own bank account.

From this record it is not supposable that Bert raised this money to let Adam have it as general assets in his hands to which his general creditors might resort. It is perfectly plain that he raised the money to be paid on this note to the bank, thus relieving himself to that extent from liability, and for no other purpose whatever.

What difference then does it make whether the checks were handed directly to the bank, or that they went through the form of having Adam indorse the insurance company's check, as well as Bert's own check which had been drawn payable to Adam? The thing to be effected was the payment to the bank, to apply upon the note, of money which came from Bert, and whereby Bert was to that extent to be relieved from his liability to the bank. The form is immaterial. Indeed, the very form employed quite conclusively indicates the intent of Bert and Adam to have it appear from the instrumentalities themselves that the funds originated with Bert and

passed to the bank, for application on the note, without the purpose or the effect of the money coming, even momentarily, under Adam's actual control.

In the raising of this money for this purpose and paying it to the bank, the assets of the bankrupt were to no extent depleted. They remained the same. Neither was his indebtedness thereby increased. His debt to the bank was to that extent discharged, and Bert became his creditor for the same amount.

If this were all there was of the transaction there would be here no preference to the bank any more than in the case of Pugh's payment, as to which the decision of the District Court was undoubtedly correct. But there is the further circumstance that upon the same day Adam gave his $3,000 note, secured by chattel mortgage on his property, to Bert. Whatever preference there was, if any, must be found in this fact.

But what had the bank to do with the giving of this note and mortgage? The evidence wholly fails to show that it even had knowledge of it. The mortgage did not in any way, or to any extent, inure to the bank's benefit or advantage. Its transaction of receiving the $3,000, derived wholly from Bert's property, to apply on the note whereon the solvent Bert was surety, in no wise affected the status of Adam's property available for the payment of his general creditors. The mortgage transaction bore no relation to the $3,000 payment. If and to the extent that it effected a preference, it surely was not a preference to the bank. The bank's situation was not thereby improved, save only that it obtained cash in exchange for the liability of this solvent surety whose assets were the sole source of the payment—assets in which no other of Adam's creditors had the remotest claim or interest.

■ It is well settled that, where payment by an insolvent debtor to a creditor does not diminish the debtor's estate available for his general creditors, the payment is in no event preferential. Continental & Commercial Trust & Savings Bank v. Chicago T. & T. Co., 229 U. S. 435, 33 S. Ct. 829, 57 L. Ed. 1268; Nat. Bank of Newport v. Nat. Herkimer County Bank, 225 U. S. 178, 32 S. Ct. 633, 635, 56 L. Ed. 1042; Citizens' Nat. Bank v. Lineberger (C. C. A.) 45 F. (2d) 522, and the cases there cited on page 526.

■ It is likewise well settled by the authorities that where a surety supplies out of his own funds the means for payment of an obligation whereon he is surety, the estate of his principal debtor is not thereby depleted, and, in such case, it is of no consequence to the creditor who is thus paid what arrangement the debtor has or makes with the surety for reimbursement of the latter.

In Citizens' Nat. Bank v. Lineberger, supra, the indorser took up the note of his principal (the bankrupt) with funds which the indorser borrowed from the bank that held the note, depositing the proceeds in the bank to the credit of the bankrupt, which gave its check to the bank in payment of the note. It was held that the payment to the bank, although directly made by check of the bankrupt, was not preferential.

In Mason v. National Herkimer County Bank (C. C. A.) 172 F. 529, 532 (the same case as was decided by the Supreme Court under the name of National Bank of Newport v. National Herkimer County Bank, supra), the court said: "The note which was paid was apparently well secured by the indorser's collateral. There was no reason why it should not have been paid in full. The bank received no more than it was entitled to without looking to the bankrupt's property at all."

In Olmstead v. Massachusetts Trust Co., 11 F.(2d) 410, 411 (D. C.), it appears the action was to recover from the bank, as a preference, payment made to it by Battey, a solvent partner, who had guaranteed to the bank a debt of an insolvent partnership of which he was a member, taking unto himself, however, as security an assignment of the assets of the partnership. The court held that the payment to the bank was not a preference; saying: "Battey may have protected himself by taking property of the insolvent maker, but that is not the present question. Even if the trust company knew that Battey had taken all the assets of the Stearns Company, except the accounts receivable, and that those were so uncollectible that the Stearns Company was insolvent, I still do not see why the Trust Company was prevented by such knowledge from taking payment from Battey on his obligations as indorser."

In the case of Keegan v. Hamilton Nat. Bank, 163 Ind. 216, 71 N. E. 647, 652, where it was sought to recover from the bank as a preference a payment made to it by the check of the bankrupt, it appeared that persons liable upon the obligation to the bank had borrowed money, depositing the proceeds to the credit of the bankrupt, which gave its check to the bank in payment of the obligation.

The contention was that the money, having been placed in the bank to bankrupt's credit, became part of the bankrupt's assets, and the payment was therefore preferential. The court said:

"The money, under the circumstances, in fact did not belong to the company. It was borrowed by those who were liable upon the $16,000 note held by appellee on their own credit, for the express purpose of being applied first to the payment of that particular note. It is true that Schell, one of the borrowers, without the knowledge or consent of his associates, as a matter of convenience, as shown, procured a draft to be drawn in favor of said company for $10,000, as part of the proceeds of the loan, and directed that the remainder thereof be deposited to the credit of the company. The latter is shown to have received the money credited to it, with the full notice and knowledge that the money did not belong to it, but belonged to the makers of the note in dispute, and that it was to be used for the express purpose of paying that note.

"The law has regard for substance, rather than 'shades or shadows,' and the mere fact that the money, under the circumstances, was credited to the company, did not make it the funds of the company, and liable to be distributed among its creditors in the event of its being adjudicated a bankrupt."

In the National Bank of Newport case, supra, the Supreme Court said: "It is not the mere form or method of the transaction that the act condemns, but the appropriation by the insolvent debtor of a portion of his property to the payment of a creditor's claim, so that thereby the estate is depleted and the creditor obtains an advantage over other creditors."

In appellee's brief no cases to the contrary are cited upon these propositions. Of course, circumstances are readily conceivable where a creditor fraudulently colludes with a surety to take assets of an insolvent debtor for application on a creditor's debt, but this record does not even remotely present such a case. Indeed, the court made a special finding absolving the bank from all fraudulent or improper conduct.

If in the giving of the chattel mortgage or in the assertion of it there is involved a preference, it was in no sense a preference to the bank, which only received payment of its adequately secured claim without its resort to the bankrupt's assets.

The judgment of the District Court is reversed, and the cause remanded.