### DEAN v. DAVIS et al. †

### In re JONES.

(Circuit Court of Appeals, Fourth Circuit. February 11, 1914.)

#### No. 1194.

1. APPEAL AND ERROR (§ 854*)—REVIEW—AFFIRMANCE—GROUNDS.

A judgment appealed from will be affirmed if the appellate court finds in the record any reason which it considers sound, though such reason may have been rejected by the trial judge.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3403, 3404, 3408–3424, 3427–3430; Dec. Dig. § 854.*]

2. BANKRUPTCY (§ 303*)—FRAUDULENT CONVEYANCE—INSOLVENCY—EVIDENCE.

In a suit by a bankrupt's trustee to set aside a deed of trust executed by the bankrupt to his brother-in-law for a present advancement of funds to satisfy a pressing creditor, on the ground that such deed of trust was fraudulent as to creditors in violation of Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), evidence *held* to warrant a finding that the beneficiary in the deed at the time of making the advancement knew that the bankrupt was insolvent and that the effect of the deed, if enforced, would be to deprive other creditors of an equal participation in the distribution of assets.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

3. BANKRUPTCY (§ 165*)—PREFERENCES—PRESENT CONSIDERATION—PAYMENT OF OLD DEBT.

Where defendant, with knowledge of the bankruptcy of his brother-in-law, in answer to an appeal for aid went to a bank which was pressing the bankrupt for payment of certain notes and advanced funds to take up the notes, receiving them from the bank without their being marked paid, and for such advancement, on the maturity of the first of a series of notes given by the bankrupt for the advancement, took a deed of trust covering all the bankrupt's property, of which the trustee immediately took possession; defendant thereby participated as agent of the bankrupt in paying the bank, taking up the notes and securing the debt, the notes given to him being regarded as mere substitution for those held by the bank, and hence the deed of trust, though given for a present advancement, was an unlawful preference in violation of Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. § 165.*]

4. BANKRUPTCY (§ 178*)—FRAUDULENT CONVEYANCES—DEED OF TRUST.

The deed was also constructively fraudulent as against the bankrupt's other creditors in violation of Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), and was therefore unenforceable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. § 178.*] ·

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond; Henry A. M. Smith, Judge.

Action by R. Beale Davis, trustee in bankruptcy of the estate of R. Crawley Jones, bankrupt, and others, against Claude M. Dean. Judgment for plaintiffs, and defendant appeals. Affirmed.

Wyndham R. Meredith, of Richmond, Va., for appellant.

Bartlett Roper, Jr., of Petersburg, Va., for appellees.

*For other ca?es see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
†Rehearing denied June 13, 1914.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

WOODS, Circuit Judge. The property of R. Crawley Jones, bankrupt, was sold by consent, and the proceeds of the sale are now in the hands of the trustees awaiting final decision of the question whether they should be paid to the general creditors of the bankrupt or to Claude M. Dean, who claims under a deed of trust or mortgage alleged by the creditors to be invalid under the terms of the bankruptcy statute.

The District Judge held: First, that Dean was not a creditor when the trust deed was executed, but, on the contrary, took the trust deed as security for money lent at the time, and that therefore the deed of trust could not be annulled as a preference given to an existing creditor under section 60b of the Bankrupt Statute; and, second, that while Dean had no purpose to benefit himself and was guilty of no moral obliquity, yet that when he accepted the deed of trust he had reasonable cause to believe that Jones was insolvent and that its effect would be to defeat the provisions of the Bankrupt Law, and on this ground adjudged the deed of trust fraudulent under section 67e of the act.

The petition of the trustee attacking the trust deed seems to have been framed in main reliance on section 60b, forbidding preferences to antecedent creditors rather than on section 67e declaring void transfers made to hinder, delay, or defraud creditors. But this is not important, since the allegations of fact contained in the petition are sufficient to support a decree annulling the deed of trust under either section.

[1] This court must affirm the judgment of the trial court if it finds in the record any reason which it considers sound, even though the District Judge may have rejected that reason and rested his decree on some other ground. Erwin v. Lowry, 48 U. S. (7 How.) 172, 12 L. Ed. 655. We are free therefore to consider whether the deed to Dean should be annulled as an unlawful preference under section 60b, although the District Court held that it was not such a preference.

[2] The material facts may be thus shortly stated: R. Crawley Jones, a merchant and farmer at Darvills, Va., was adjudged a bankrupt on April 25, 1910, under a petition filed by his creditors December 24, 1909. On September 1, 1909, Jones wrote and sent by his father, J. Samuel Jones, the following letter to his brother-in-law, Claude M. Dean, residing in Richmond:

"I am in serious trouble and need your help at once, badly, being charged with a very grave offense under the law and if arrested for same, although I afterwards prove myself innocent, it would be a disgrace to me and my family. If I can get hold of $1,600 in cash I will be saved, so for God's sake loan it to me and save my wife and child from disgrace. If you will do this I will give you notes for the amount, and a deed of trust on everything I have or possess to secure you. All I need is a little time, for I have enough to more than pay you five times over again. It is absolutely necessary that I have this money at once. As soon as I quiet this matter up I will see you and explain all. Please do this for me and my family at once, for I have no time to lose or explain further. Find notes inclosed for the amount and as soon as you prepare deed of trust I will sign same."

Inclosed with the letter were notes dated September 1, 1909, one being for $100 and the others for $500 each, the first due September 10, 1909, and the others at 30, 60, and 90 days after date. The charge against Jones referred to in the letter was the forgery of the indorsements of certain notes held by Virginia National Bank of Petersburg. Dean had no previous knowledge of R. Crawley Jones' embarrassment, and J. Samuel Jones assured him that his son's debts were comparatively small. Actuated entirely by a desire to aid his brother-in-law, with no expectation of benefit to himself, Dean immediately agreed to procure the $1,600 requested. On September 3d he went with J. Samuel Jones to the bank, furnished the money, which was handed to the cashier by J. Samuel Jones, and received from the cashier by the hand of J. Samuel Jones the notes, some of which had not matured, without mark of payment. The cashier testified the notes were not marked paid because he understood the transaction to be a sale of the notes to J. Samuel Jones, while Dean's explanation was that the stamp was not convenient at the time. R. Crawley Jones was not present, but there can be no doubt that Dean was acting not only on his own behalf, but on behalf of R. Crawley Jones, the debtor, in conjunction with J. Samuel Jones. The deed of trust purporting to secure the four notes which had been sent to Dean with the letter was not executed until September 11th, one day after the first note for $100 given to Dean had matured; the explanation being that R. Crawley Jones was so engaged in harvesting his crop that he could not spare the time to go to Richmond. The deed of trust covered all the property, both real and personal, of the debtor; and the day after its execution Dean directed his father, E. C. Dean, who was the trustee named in the deed, to seize and sell the property. The trustee took possession on September 13th, for the purpose of foreclosure and sale. There was a senior mortgage on the land which was barely met by foreclosure sale.

The insolvency of R. Crawley Jones at the time of this transaction is admitted; and it is difficult to imagine stronger reasons for Dean to believe him insolvent, short of having an accurate balance sheet of his assets and liabilities. The appeal in the letter to Dean of September 1st signified acute financial distress, and was notice that Jones had exhausted his credit, and had come to the end of his ability to obtain money in the ordinary course of business. True, it appears from Dean's testimony that he had the general opinion or assurance from the debtor and his father that the debtor had ample assets and small liabilities, but this assurance was on its face obviously irreconcilable with the declared condition of pecuniary distress. All men of affairs know that it is probable almost to the point of certainty that a merchant brought to the condition indicated by the letter of Jones to Dean would be owing considerable debts for goods purchased. One who takes a mortgage under such conditions covering a debtor's entire property is charged with the knowledge which due investigation as to debts and incumbrances would have given. A reasonable man must be charged, too, with knowledge that the execution of a mortgage covering the entire property of a merchant usually means a sus-

pension of his business and bankruptcy. The immediate seizure of the property for default in the payment of a small note, assuming it to have been made in good faith, shows that Dean believed that prompt seizure and sale of the entire property was necessary to collect even his secured debt. Without further discussion it seems clear that the conclusion of the District Judge on this point is supported by the great weight of evidence.

[3] We are unable to agree with the District Judge that the mortgage is protected from attack as an unlawful preference on the ground that it was given for a present consideration and not to obtain a preference for a pre-existing debt. It is true that Dean lent the money at the time the mortgage was executed, and the principle is settled by the Supreme Court in Van Iderstine v. National Discount Co., 227 U. S. 575, 33 Sup. Ct. 343, 57 L. Ed. 652, that the mere knowledge of a lender that the money borrowed is to be applied to an existing debt does not make the security given invalid under section 60b as an unlawful preference or under section 67e as a fraud. But Dean has much more to overcome than mere knowledge that the money lent was to be used to pay an existing debt. Charged with notice of the insolvency of the debtor, his purpose was to extricate Jones from embarrassment by acting with and for him in preferring a pressing debt. In pursuance of this purpose, as agent for the debtor and in his behalf, he actively participated in satisfying the pressing creditor, and taking up the pressing debt by means of the secured debt to himself. Even if the bank's notes had been marked paid, the whole transaction showed on its face that there was not that novation that the bankrupt statute contemplates as necessary to the protection of a lender. Looking away from the form to the substance, by his participation as agent of the insolvent debtor in paying the bank and taking up the notes and securing the debt, Dean tied himself to the old debt, and the notes given to him must be regarded mere substitution of new papers for the old.

Where in such a transaction the lender acts as agent for the creditor, the security has been held invalid. In re Beerman (D. C.) 112 Fed. 663; Alexander v. Redmond, 180 Fed. 92, 103 C. C. A. 446; Walters v. Zimmerman (D. C.) 208 Fed. 62; Van Iderstine v. National Discount Co., supra. The reason is still stronger for holding it invalid when the lender acts as the agent of the debtor with the distinct purpose of aiding him to prefer a particular debt for his own benefit. If it were otherwise, the purpose of the statute in securing equality among creditors could be defeated at the will of the debtor by the device of substituting a new debt for the old. The application of the principle on which this conclusion rests in the administration of trusts and in other branches of the law is familiar. The deed of trust to Dean must therefore be declared void under section 60b as an unlawful preference.

[4] The mortgage is also obnoxious to condemnation under section 67e, as held by the District Judge. We should not attempt to add anything to his convincing decree on this point but for the strong reliance of counsel for appellant on the case of Van Iderstine v. Na-

tional Discount Co., 227 U. S. 575, 33 Sup. Ct. 343, 57 L. Ed. 652, recently decided. That case really holds nothing more than had been previously decided in Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, namely, that section 67e applies only to actual fraud as distinguished from a mere preference, and that the fact that the lender knew at the time of making the loan and taking the security that the borrowed money would be used to prefer a creditor did not make the transaction fraudulent. But here there was not only knowledge of an intended preference, but actual participation by the lender as agent of the borrower and for his benefit in carrying out the plan of preference which it was obvious would result in closing the business of the debtor. Actual fraud has a large signification, and embraces any undue advantage taken of another. Dean, it is true, had no corrupt motive to benefit himself; on the contrary, he was impelled by a laudable and unselfish impulse to aid his brother-in-law in his troubles, and in the effort actually incurred labor and expense with no gain to himself. But the conclusion cannot be escaped that in his general zeal he lost sight of the rights of the creditors. Having the strongest reason to believe Jones insolvent, he took a mortgage of his entire property in order to enable him to prefer one creditor to the exclusion of all others and enforced the mortgage, with the apparent consent of the debtor, by seizure almost at the instant of execution of the maturity of one small note. As a reasonable man, he must be charged with knowledge that this course would inevitably result in the reduction of the value of the assets of a debtor already insolvent, the payment of his preferred debt and the failure to pay other debts. All this was aiding and acting with Jones to compass the preference of one creditor to the exclusion of others—to take undue advantage of other creditors by depriving them of their rights conferred by the Bankrupt Law to share equally in the distribution of the assets of an insolvent debtor. However innocent Dean may have been of any formed intention to accomplish such a purpose, he must be charged with this purpose and the consequences of his course of conduct, since in the administration of justice all men must be charged with intention to produce the results which the exercise of reason would make perfectly evident as the results to be anticipated. The decree of the District Court must be affirmed, with costs against the appellant.

Affirmed.

PRITCHARD, Circuit Judge. I concur in the result.