## JOHNSTONE v. BABB.

(Circuit Court of Appeals, Fourth Circuit. March 1, 1917.)

No. 1490.

1. BANKRUPTCY ☞305—STATUTE—CONSTRUCTION.

Under Bankr. Act July 1, 1898, c. 541, § 60, 30 Stat. 562 (Comp. St. 1913 § 9644), providing for the setting aside of preferential transfers, a mortgage given by a bankrupt within four months of bankruptcy will be set aside only in so far as it is a preference; but, if the mortgage be subject to attack under section 67 (section 9651), which is practically the Elizabethan statute against fraudulent conveyances, the lien itself may be vacated.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 466–468.]

2. BANKRUPTCY ☞303(3)—FRAUDULENT CONVEYANCES—EVIDENCE—SUFFICIENCY.

In a suit by a trustee in bankruptcy to set aside a mortgage given by the bankrupt within four months of bankruptcy, evidence *held* insufficient to show that it was either a preferential or fraudulent transfer, subject to attack under Bankr. Act July 1, 1898, § 60, or section 67, both of which provide for attack on such conveyances.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 462.]

3. BANKRUPTCY ☞184(1)—FRAUDULENT CONVEYANCES—ATTACK.

In such case, the mortgage cannot be questioned under the South Carolina statute against fraudulent conveyances (Civ. Code 1912, § 3455).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 275.]

4. FRAUDULENT CONVEYANCES ☞166—BULK SALES ACT—MORTGAGE.

In such case, the mortgage which was on the bankrupt's stock of goods is not subject to attack, as violating the South Carolina Bulk Sales Act (Civ. Code 1912, § 2434); the bankrupt assuring the mortgagor the loan would enable him to pay off his debts.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 519.]

Appeal from the District Court of the United States for the Western District of South Carolina, at Greenville, in Bankruptcy; Joseph T. Johnson, Judge.

In the matter of the bankruptcy of W. C. Babb. Suit by Albert S. Johnstone, trustee in bankruptcy, against V. M. Babb. From a decree for defendant, complainant appeals. Affirmed.

A. C. Todd, of Laurens, S. C. (Haynsworth & Haynsworth, of Greenville, S. C., and H. S. Blackwell and Dial & Todd, all of Laurens, S. C., on the brief), for appellant.

R. E. Babb, of Laurens, S. C., and E. M. Blythe, of Greenville, S. C. (Simpson, Cooper & Babb, of Laurens, S. C., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and DAYTON, District Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DAYTON, District Judge. [1] This case presents the nowise unusual question involved when a trustee in bankruptcy seeks, under sections 60 and 67 of the Bankruptcy Act, to assail a loan made to the bankrupt and secured within four months of his adjudication. A long line of decisions has determined that the relief sought, if granted, under section 60, extends only to an avoidance of the preference secured by the lender himself as a creditor, or as the practical agent of one who is a creditor. If such relief, however, is sought and granted, under section 67, which is practically the Elizabethan statute against fraudulent conveyances, generally adopted by the states of this country, such relief may extend to the extinguishment of the lien created, as having been so created for the purpose of hindering, delaying, and defrauding creditors.

[2] Here appeal is made to both sections by the trustee for relief. Necessarily the case must be determined by the facts disclosed. These facts briefly stated are: W. C. Babb, the bankrupt, and V. M. Babb, the appellee, are distantly related by blood and are connected by marriage, having married sisters, the daughters of J. L. Mahaffey. Both resided in Fountain Inn, S. C., and both were engaged in separate and distinct lines of mercantile business. Mahaffey, the father-in-law, was a farmer and a merchant to a limited extent, living 12 miles in the country from Fountain Inn. V. M. Babb, the appellee, was a man of means, "regarded as one of the wealthiest men of the town," and in the habit of lending considerable sums of money. W. C. Babb had been a merchant for a number of years, first in the country, but for something like four years in this town of Fountain Inn. Besides his mercantile stock, worth in the neighborhood of $5,000, in the fall of 1914, he owned three tracts of land, 127 acres, 118¾ acres, 129 acres, and a residence property in the town. In 1912, two years before, he had given a mortgage to a local bank on the 127 acres and the 118¾ acres for $2,500, and another for $4,554.36 on the town residence property. This latter debt had, however, by the fall of 1914, been reduced by him, through sale made of part of the lot, to $2,054.36. These mortgages were duly recorded at or near the time of their execution, but apparently in no way affected his financial reputation and credit in the business world. This fall of 1914 brought hard times to this community. It found the bankrupt owing between $7,000 and $8,000 independent of the mortgage debts. Some of this indebtedness was represented by notes due in banks seeking to make collections. His father-in-law, Mahaffey, was surety for him on two notes due such banks, aggregating $1,111.82. In this condition he applied to appellee, V. M. Babb, for a short loan of $2,500, telling him that—

"he had some notes that were past due, and then some bills that would be due right soon, probably some of them then, and if he could get $2,500 that he could pay up all of his bills so he could run along all right and put him in easy shape, and said he could secure me [him] all right; that there was nothing on this 129 acres of land, and nothing on his stock; would I [he] loan him the money and take a mortgage on the land and stock of goods?"

He further indicated his purpose to reduce the stock and a belief that he could make a sale of some of his lands. Appellee made in-

vestigation, found the 129 acres of land clear, as also the stock which, from casual, but personal, inspection, he thought was worth $4,000 or $5,000, and made the loan, securing the same by mortgages on this stock and 129 acres of land. The bankrupt, with the money, paid off the two notes in banks upon which the father-in-law was surety, aggregating, as stated, $1,111.82, and the residue went to pay in part clerk hire and store expenses, a small sum to the expenses incurred by his daughters away at school, and the residue substantially passed into the hands of his trustee in bankruptcy.

The appellee, V. M. Babb, states positively that, when he made the loan, he had no knowledge of Mahaffey, the father-in-law, being security on these notes; that he regarded the bankrupt as solvent; and that in effect he made the loan, not for the purpose either of securing preference of a creditor or creditors, or of hindering, delaying, or defrauding them, but for the purpose of aiding the bankrupt to meet a money stringency more or less common to business men. No single word or act of his is shown in evidence to dispute this conclusion as to his motive and good faith in the premises. It is not necessary to enter into further discussion of the facts. The referee, Mr. McSwain, filed a written opinion in the cause, which is so full, complete, accurate, and able in its discussion of both the law and the facts that little or nothing can be added thereto.

Counsel for the trustee has strongly urged that the rulings in Dean v. Davis, 212 Fed. 88, 128 C. C. A. 658, decided by this court, are determinative of the right to have the mortgages here set aside as fraudulent. We do not think so. Clear distinctions exist between the two cases. In Dean v. Davis the lender, held to have full knowledge of the bankruptcy of the borrower and that he was being pressed for payment of notes to a bank questioning the integrity of the indorsements thereon, went to the bank and advanced funds to take them up, and, upon maturity of the first of a series of notes given by the bankrupt for the advancement, took a deed of trust on all the bankrupt's property, and proceeded to its immediate enforcement. In affirming this court in this case, by an opinion handed down January 8, 1917 (242 U. S. 438, 37 Sup. Ct. 130, 61 L. Ed. ——), the Supreme Court says:

"Making a mortgage to secure an advance with which the insolvent debtor intends to pay a pre-existing debt does not necessarily imply an intent to hinder, delay, or defraud creditors. The mortgage may be made in the expectation that thereby the debtor will extricate himself from a particular difficulty and be enabled to promote the interest of all other creditors by continuing his business. The lender who makes an advance for that purpose with full knowledge of the facts may be acting in perfect 'good faith.'"

[3, 4] Appellee Babb's motives in making this loan and his expectation as to the results thereof are exactly set forth in this extract, as disclosed by the evidence here. Holding that his mortgages were taken in good faith and with no fraudulent intent renders unnecessary the discussion of appellant's contention to the effect that they were void under the South Carolina statute against fraudulent conveyances. Nor do we think they can be construed as violating the Bulk Sales Law of that state.

The decree of the court below is affirmed.