Mary K. AULICK, Appellant and
Cross-Appellee,

v.

Flournoy L. LARGENT, Jr., Trustee for
Ansel B. Solenberger, Bankrupt, Appellee and Cross-Appellant,

v.

Eldridge M. LEMLEY, Appellee.

No. 8240.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 23, 1961.

Decided Oct. 2, 1961.

David G. Simpson and Thomas G. Scully, Winchester, Va. (Scully & Woltz, Winchester, Va., on the brief), for appellant and cross-appellee.

Flournoy L. Largent, Jr., Winchester, Va., for appellee and cross-appellant.

George G. Snarr, Jr., Winchester, Va. (Joseph A. Massie, Jr., Winchester, Va., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

The District Court, reviewing and affirming the findings and conclusions of the referee in bankruptcy, held that a transfer of shares of corporate stock to one Eldridge M. Lemley by an insolvent, within four months prior to bankruptcy, as security for the contemporaneous endorsement by Lemley of insolvent debtor's note payable to Lemley and delivered to a creditor, Mrs. Mary K. Aulick, in satisfaction of a debt then due her from the insolvent, resulted in a voidable preference to Mrs. Aulick. This appeal followed. We are of the opinion that, on principle, we must affirm.

This case, twice styled Largent v. Lemley, is here on appeal for the third and, as we hopefully suggest, the last time. On each former appeal the case was remanded for further proceedings.[1] On this appeal Mary K. Aulick is appellant and cross-appellee. Flournoy L. Largent, Jr., trustee in bankruptcy for Ansel B. Solenberger, bankrupt, is appellee and cross-appellant. Eldridge M. Lemley has not appealed and appears here only as appellee.

Our second opinion [2] contained a recital of certain facts but the principal facts are more fully stated herein.

In August 1956 Lemley held a bond in the amount of $3,000 which had been sold to him by Ansel B. Solenberger, hereinafter referred to as Solenberger or bankrupt. During that month Lemley learned that the bond was a forgery and the bankrupt, upon confrontation, promised to make good the amount to Lemley. At the same time Mrs. Aulick held bankrupt's note for $5,000, a bond of one Jenkins for $4,000 which bankrupt had sold to her, and an investment in a Building and Loan Association of which bankrupt was the sole executive officer. In the early part of August 1956, Mrs. Aulick heard that Solenberger's financial affairs were in bad condition. She asked her attorney to investigate and shortly thereafter the attorney reported to her that the $4,000 bond was a forgery. At Mrs. Aulick's request, her attorney, Mr. Scully, undertook to do what he could to protect her interests. He went to see Solenberger and demanded that he provide security for the payment to Mrs. Aulick of $9,000, that being the total amount of the note and forged bond held by her. To this Solenberger agreed but suggested also that he take over and compensate Mrs. Aulick for the $1,700 which she had invested in the Building and Loan Association.

1. Largent v. Lemley, 4 Cir., 1958, 256 F. 2d 446; Largent v. Lemley, 4 Cir., 1959, 272 F.2d 66.

2. 4 Cir., 1959, 272 F.2d 66.

Meanwhile, Solenberger had informed Lemley that he was being pressed by Mrs. Aulick and proposed that if Lemley would endorse a $10,700 note to Mrs. Aulick, he, Solenberger, would give Lemley a note for $13,700 (representing the amount of the Aulick note plus the $3,000 owing to Lemley) and would secure Lemley by transferring to him, as collateral, a certificate for 158 shares of the capital stock of Frederick County Improvement Corporation. Lemley, after first satisfying himself that the stock certificate was genuine, offered to buy the stock but the offer was refused. Lemley then agreed to Solenberger's proposal. Solenberger then asked Mrs. Aulick's attorney if he would accept a note for $10,700 endorsed by Lemley, and the attorney, knowing Lemley to be financially responsible, agreed.

On August 16, 1956, Attorney Scully, representing Mrs. Aulick, met with Lemley and Solenberger at the latter's office. Solenberger suggested that he give his note for $10,700 payable to Mrs. Aulick and endorsed by Lemley. At Mr. Scully's proposal, however, Solenberger executed a note for $10,700 payable to Lemley, the latter then endorsed it and returned it to Solenberger. The note was then and there delivered by Solenberger to Mrs. Aulick's attorney. Later the same day, pursuant to their earlier agreement and understanding, Solenberger gave his note to Lemley for $13,700 and delivered to him the certificate for 158 shares of stock in Frederick County Improvement Corporation. Mr. Scully was not present at that time and neither he nor Mrs. Aulick had any knowledge of the agreement as to the transfer of the stock or the actual transfer thereof. A little more than a month later, Solenberger was adjudicated an involuntary bankrupt.

The $10,700 note given to Mrs. Aulick was not paid at its maturity date several months after the adjudication in bankruptcy, and she then proceeded in a state court against Lemley as endorser and secured a judgment against him for the amount of the note with interest, costs and attorney fees, which judgment was subsequently paid in full by Lemley.

It was found by the District Court, which finding is not controverted, that both Lemley and Mrs. Aulick knew Solenberger to be insolvent at the time of the execution and delivery of the notes for $10,700 and $13,700 and the transfer and delivery of the stock to Lemley. There was nothing in the way of evidence to indicate or even suggest any collusion between Lemley and Mrs. Aulick. Lemley testified that he was not acquainted with Mrs. Aulick and, so far as he knew, had never seen her. Mrs. Aulick testified that she never knew Lemley.

When this case was remanded on two prior occasions, this court entertained some doubt as to whether the full and complete facts and circumstances surrounding the bankrupt's transactions had been developed. On each remand the District Court re-referred the case to the referee. When proceedings were had on the occasion of the first remand, Mrs. Aulick was, for the first time, made a formal party although the trustee made no allegations against her. She did, however, appear and testify. Up to that point, the trustee was proceeding on the theory that the transfer and pledging of the corporate stock to Lemley was a preferential transfer as to him alone to be voided and the stock recovered, obviously under section 60, sub. a(1) as amended March 18, 1950, c. 70, § 1, 64 Stat. 24, and § 60, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 96, subs. a (1), b.

Following each of the first two hearings, the referee had held that the pledge and transfer of the stock constituted a voidable preference as to Lemley alone, not only as to his antecedent and preexisting debt of $3,000 but as to the $10,700 included in the bankrupt's $13,700 note to Lemley to be secured by the stock so transferred. In each instance, upon review, the District Court held that Lemley received a voidable preference only as to his $3,000 antecedent debt, but the transfer of the stock, to the extent it was intended to secure the $10,700 in-

cluded in the $13,700 note and Lemley's endorsement of Mrs. Aulick's $10,700 note, was based upon a fresh consideration and was not a voidable preference.

On the occasion of the second remand and last referral, the trustee filed a new petition charging that the transfer of the stock to Lemley constituted a voidable preferential transfer to Mrs. Aulick to secure her antecedent debt of $10,700, and also a voidable preferential transfer to Lemley to secure his antecedent debt of $3,000. Relief was demanded as against both of these parties. The privilege of presenting new and additional evidence was waived by all of the parties and the facts remain as they were when the case was last before us.

The District Court has now affirmed the referee's decision, findings and conclusions which are now the subject of this appeal and stated by the referee as follows:

"(1) Both Mr. Lemley and Mrs. Aulick had knowledge of the insolvency of the bankrupt at the time of the execution of the .new notes and the transfer of the Frederick County Improvement Corporation stock to Mr. Lemley;

"(2) Both Mr. Lemley and Mrs. Aulick are properly before this court;

"(3) The transfer of the Frederick County Improvement Corporation stock for the security of the antecedent debts due Lemley and Mrs. Aulick depleted the assets of the bankrupt estate for the reason

that Lemley could still assert the claim in the amount of Mrs. Aulick's debt paid by him to Mrs. Aulick, against the bankrupt estate;

"(4) Mrs. Aulick received Lemley's endorsement and eventual payment of her debt on the strength of the transfer of the stock to Lemley, thereby receiving a voidable and preferential transfer;

"(5) The payment by Lemley to Mrs. Aulick of the $10,700.00, plus $1,135.00 attorney's fee and costs, constituted a preferential payment, for the reason that Lemley still has his claim to assert against the bankrupt estate by virtue of his subrogation rights of Mrs. Aulick's claim."

An order of the referee, affirmed by the District Court, provided that the transfer of the 158 shares of Frederick County Improvement Corporation stock to Eldridge M. Lemley "be and hereby is declared a preferential transfer." It was further ordered that Lemley should assign, deliver and transfer the stock to Largent, the trustee in bankruptcy; that Mrs. Aulick should pay to the trustee the money paid to her by Lemley, viz., $11,835, and that, upon receipt of said sum, Lemley should be reimbursed to the extent of the amount paid by him to Mrs. Aulick.

The pertinent portions of the applicable statutes are set out in footnote 3 below.[3]

■ It is well established that under Section 60, sub. a(1) of the Bankruptcy

---

3. 11 U.S.C.A. § 96. Preferred creditors

"(a) (1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an ante- cedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. * * *

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: * * *"

Act, certain elements must be present to constitute a preference,[4] as follows:

1. A debtor, making or suffering a transfer of his property,

2. to or for the benefit of a creditor,

3. for or on account of an antecedent debt resulting in a depletion of the estate,

4. while insolvent, and

5. within four months of bankruptcy,

6. the effect of which transfer will be to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class.

Under section 60, sub. b of the act, 11 U.S.C. § 96, sub. b, a preference is voidable by the trustee in bankruptcy only upon proof of the additional element that the creditor receiving or to be benefited by the preference had reasonable cause to believe that the debtor was insolvent. If any one of the elements of a preference as enumerated above is wanting, consideration may not be given to an avoidance of the transfer under section 60, sub. b, since a preference has not been established. The burden of proving the existence of these essential elements is upon the trustee seeking to avoid the transfer.[5]

█ The transfer of the stock to Lemley, insofar as it was clearly intended to secure the payment of his antecedent debt in the amount of $3,000, was a voidable preference and Lemley admits the correctness of this conclusion. In his brief we find the following: "The appellee, Lemley, has never contested that to the extent the bankrupt furnished collateral security for Lemley's forged $3,-000.00 bond, a preference resulted. It is likewise admitted that the Trustee is entitled to such shares of stock in the Frederick County Improvement Corporation whose aggregate value exceeds $10,700.00."

█ Whether the transfer of the stock to Lemley to secure his endorsement of Mrs. Aulick's note constituted a voidable and preferential transfer to him is next to be considered. It has long been held that a transfer by an insolvent within four months of bankruptcy, in order to be a voidable preference, must be on account of a pre-existing debt.[6] But if a mortgage or other security be given partly for an antecedent debt and partly for a present consideration, it is voidable as a preference only to the extent of the antecedent debt.[7]

In 6 Am.Jur., Bankruptcy, § 1054 (1950), certain principles are stated as follows:

"To say that a preference has been given implies the prior existence of a debtor and creditor relationship. In other words, a preference occurs only by the payment or giving of security for the payment of an antecedent debt. * * *

"A transfer made for a consideration presently furnished is not a preference. The element of antecedent debt is absent. * * * Neither a transfer by way of security nor a debt contemporaneously incurred nor the giving of security for credit to be extended in the future can create a preference voidable under the Bankruptcy Act. * * *

"The lapse of a short period of time between the making of a loan and the furnishing of security by

4. Collier on Bankruptcy, 14th Ed., Vol. 3, pp. 755, 756.

5. Collier on Bankruptcy, 14th Ed., Vol. 3, pp. 756, 757.

6. See In re Metropolitan Dairy Co., 2 Cir., 1915, 224 F. 444; Ernst v. Mechanics' & Metals Nat. Bank, 2 Cir., 1912, 201 F. 664; Adams v. City Bank & Trust Co., 5 Cir., 1940, 115 F.2d 453, 134 A.L.R. 1215; Nolen v. Ware Trust Co., D.C.

Mass.1935, 10 F.Supp. 297; Newton v. New Bedford Storage Warehouse Co., D. C.Mass.1925, 6 F.2d 93; Lake View State Bank v. Jones, 7 Cir., 1917, 242 F. 821; Mills v. Virginia-Carolina Lumber Co., 4 Cir., 1908, 164 F. 168, 170, 21 L.R.A., N.S., 901.

7. See In re Sutherland Co., D.C.Mass.1917, 245 F. 663; City National Bank of Greenville v. Bruce, 4 Cir., 1901, 109 F. 69.

the borrower does not characterize the latter transaction absolutely as a transfer on account of an antecedent debt, where the evidence shows that the making of the loan and the furnishing of the security were in practical effect a single transaction."

And it has been held that a mortgage given to secure a present advance is not a preferential transfer under section 60 of the Bankruptcy Act, even though the funds so obtained are used to prefer another creditor. Dean v. Davis, 1917, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419.

The oft-cited case of Dean v. Davis involved an appeal from a decision of this court reported at 212 F. 88. The facts were that the bankrupt had discounted with a bank certain notes which the bank later concluded bore forged endorsements. The bank threatened criminal prosecution and demanded that the bankrupt take up the notes. The bankrupt appealed to Dean, his brother-in-law, for a loan of $1,600 promising to secure it by a mortgage on all of his property which he represented to be worth more than five times that amount. Dean provided the money and, acting in conjunction with bankrupt's father, paid the bank the amount of the notes and took them directly from the bank. Shortly thereafter the bankrupt executed notes and a mortgage securing their payment to Dean although the mortgage was not recorded until after the notes had matured. All of these transactions took place within four months preceding bankruptcy. Bankrupt's assets were insufficient to satisfy the claims of general creditors. This court was of the opinion that the mortgage to Dean was an unlawful preference under section 60 (as well as under another section of the Bankruptcy Act pertaining to fraudulent transfers made with the intent to hinder, delay and defraud creditors) and should be declared void, stating at 212 F. at page 91:

"* * * It is true that Dean lent the money at the time the mortgage was executed, and the principle is settled by the Supreme Court in Van Iderstine v. National Discount Co.,

227 U.S. 575, 33 Sup.Ct. 343, 57 L. Ed. 652, that the mere knowledge of a lender that the money borrowed is to be applied to an existing debt does not make the security given invalid under section 60b as an unlawful preference or under section 67e as a fraud. But Dean has much more to overcome than mere knowledge that the money lent was to be used to pay an existing debt. Charged with notice of the insolvency of the debtor, his purpose was to extricate Jones from embarrassment by acting with and for him in preferring a pressing debt. In pursuance of this purpose, as agent for the debtor and in his behalf, he actively participated in satisfying the pressing creditor, and taking up the pressing debt by means of the secured debt of himself. * * * Looking away from the form to the substance, by his participation as agent of the insolvent debtor in paying the bank and taking up the notes and securing the debt, Dean tied himself to the old debt, and the notes given to him must be regarded mere substitution of new papers for the old.

"Where in such a transaction the lender acts as agent for the creditor, the security has been held invalid. * * * The reason is still stronger for holding it invalid when the lender acts as the agent of the debtor with the distinct purpose of aiding him to prefer a particular debt for his own benefit. If it were otherwise, the purpose of the statute in securing equality among creditors could be defeated at the will of the debtor by the device of substituting a new debt for the old. The application of the principle on which this conclusion rests in the administration of trusts and in other branches of the law is familiar. The deed of trust to Dean must therefore be declared void under section 60b as an unlawful preference."

The Supreme Court rejected that portion of the decision of this court as quot-

ed above and, at 242 U.S. 443, 37 S.Ct. 130, 131, 61 L.Ed. 419, stated:

> "The mortgage was not voidable as a preference under § 60b. Preference implies paying or securing a pre-existing debt of the person preferred. The mortgage was given to secure Dean for a substantially contemporary advance. The bank, not Dean, was preferred. The use of Dean's money to accomplish this purpose could not convert the transaction into a preferring of Dean, although he knew of the debtor's insolvency. Mere circuity of arrangement will not save a transfer which effects a preference from being invalid as such. National Bank of Newport v. National Herkimer County Bank, 225 U.S. 178, 184 [32 S.Ct. 633, 56 L.Ed. 1042]. But a transfer to a third person is invalid under this section as a preference, only where that person was acting on behalf of the creditor, as in In re Beerman, 112 Fed.Rep. 663, and Walters v. Zimmerman [D.C.], 208 Fed.Rep. 62 [Marsh v. Walters, 6 Cir.]; 220 Fed.Rep. 805. Here Dean acted on the debtor's behalf in providing the money and taking up the notes."

The Supreme Court, however, in looking to and construing the trustee's bill in equity, the answer, the evidence and the apparent recognition by the parties of the issue of fraudulent transfer, held, as did this court, that the mortgage was fraudulent, made with the intent to hinder, delay and defraud creditors, and void under the pertinent section 67, sub. e of the act.[8]

In the instant case, it is to be borne in mind that we are considering an alleged preferential transfer as distinguished from a transfer made with intent to defraud. There is nothing in the record to show that Lemley was acting as the agent of Mrs. Aulick or that he had the intention or desire to aid in procuring any advantage to Mrs. Aulick who was a stranger to him. Lemley was a friend of the bankrupt with whom he had had previous dealings and, at the solicitation of the bankrupt, he agreed to endorse the Aulick note on condition that he be furnished with security which would protect him as endorser and, at the same time, secure payment of his claim of $3,000 against the bankrupt. He, Lemley, was bound to know that he would probably be required to discharge his contingent liability as endorser with his own funds since he had every reason to believe that Solenberger was insolvent.

It is not uncommon that a debtor, seeking relief from the demands of an uneasy and insistent creditor, induces a friend or other third party to become guarantor of the debt or to assume its payment, at the same time furnishing to the third party security for his undertaking. The debtor may obtain a loan from a bank or elsewhere to pay off a pressing creditor and give collateral or other security for the loan. If the debtor should within four months thereafter go into bankruptcy, it does not follow that a voidable preference has occurred. Adams v. City Bank & Trust Co., 5 Cir., 1940, 115 F.2d 453, 134 A.L.R. 1215.

In Dean v. Davis, supra, Dean was furnishing the money to pay the antecedent debt due a creditor who was pressing for payment (just as Mrs. Aulick was pressing for payment of her debt), yet the Supreme Court held that the transfer of the security, the giving of the mortgage, was supported by a present consideration and was not a voidable preferential transfer. Even though Lemley endorsed the Aulick note prior to the actual delivery of the stock, he acted pursuant to his earlier agreement and the endorsement and delivery were in practical effect a single transaction. As to Lemley, we are of the opinion that the transfer of the stock

---

8. Van Iderstine v. National Discount Co., 1913, 227 U.S. 575, 582, 33 S.Ct. 343, 57 L.Ed. 652, points out the distinction between the intent to prefer and the intent to defraud.

to him was supported by a present consideration, namely, his endorsement of Mrs. Aulick's note; that the transfer of the stock, insofar as it was intended to secure Lemley as such endorser, was not to secure an antecedent debt and, except as to the $3,000, he did not receive a voidable preference.

We next consider these transactions as they affected Mrs. Aulick's claim against the bankrupt. As we said in Largent v. Lemley, 4 Cir., 272 F.2d 66, at page 69: "On the face of it, it seems that the transfer either to Lemley or to Mrs. Aulick created a voidable preference."

In Dean v. Davis, supra, the creditor bank which received payment was not before the court as a party litigant. However, by way of dictum, the Supreme Court said:[9] "*The bank, not Dean, was preferred.*" (Emphasis added.) The Supreme Court had no occasion to determine whether, under the then pertinent provisions of the bankruptcy law, the preference to the bank was *voidable.* There the security was given to Dean who supplied the money to pay off the bank, just as here the stock was pledged to secure Lemley who endorsed Mrs. Aulick's note and ultimately supplied the money to pay her.

Mrs. Aulick received payment in full of her antecedent debt. True, she collected from Lemley as endorser but she was clearly preferred to the extent that she received a greater percentage of her claim than other creditors of the same class. The question remains—is the preference *voidable?*

The principal argument advanced by Mrs. Aulick is that the payment to her by Lemley *from his own funds* did not deplete the estate available to the trustee for distribution among creditors of the same class and, therefore, one of the essential elements of a voidable transfer was lacking. She contends that it is a well established principle that a payment to a creditor of the bankrupt by bankrupt's endorser, surety or guarantor results only in a substitution of creditors and does not deplete the estate. In support of her contention, she relies strongly upon the case of National Bank of Newport v. National Herkimer County Bank, 1912, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042. Admittedly that case has been cited many times as authority for the principle which she contends must here be applied. However, the dissimilarity in the factual situations there and here requires that we reject that case as binding or controlling authority in the instant case. In determining the present issues, decisions of other courts on different facts and involving the then pertinent provisions of the bankruptcy laws are of no assistance and the cases are so numerous that an analysis thereof would require volumes.[10]

In the Newport Bank case cited above, the bankrupt corporation had purchased machinery and supplies from Titus Sheard Company (hereinafter called "Sheard") and gave its note in payment.

---

9. 242 U.S. at page 443, 37 S.Ct. at page 131.

10. Among other cases cited by Mrs. Aulick to support her contentions are: In re Zaferis Bros. & Co., 9 Cir., 1933, 67 F. 2d 140; First Nat. Bank of Danville, Ill. v. Phalen, 7 Cir., 1932, 62 F.2d 21, 88 A.L.R. 75; Citizens Nat. Bank of Gastonia, N. C. v. Lineberger, 4 Cir., 1930, 45 F.2d 522; Miller v. Fisk Tire Co., D.C.D.Minn.1926, 11 F.2d 301; Olmstead v. Massachusetts Trust Co., D.C.D.Mass. 1926, 11 F.2d 410. The case of Olmstead v. Massachusetts Trust Co., supra, appears to support Mrs. Aulick's contention but the District Judge was following literally the holding in National Bank of Newport v. Herkimer County Bank, 1912, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042, stating that *payment* by the endorser did not deplete the estate of the bankrupt maker, but the Court failed to consider the question not present in the Newport Bank case, whether *securing the endorser* did deplete the debtor's estate. From an analysis of the facts disclosed in the cases listed in this footnote and the provisions of the Bankruptcy Act as they then existed and applied, we find these cases inapposite. The changes in 60, sub. b of the Bankruptcy Act, effected by amendments, are pointed out in the opinion.

Sheard endorsed the note and discounted it at the Herkimer Bank, taking for its own benefit the proceeds of the discount. The note was renewed from time to time with like endorsement. On August 22, 1903, at the instance of the Herkimer Bank, Sheard specifically assigned to the bank its bills receivable as collateral security for its endorsement and some of its other obligations. On September 26, 1903, and within four months of bankruptcy, Sheard paid the bank and took up the note and collateral. The amount so paid was then charged by Sheard to the bankrupt corporation to which Sheard was indebted on open account in a larger amount, and Sheard was given a corresponding credit on bankrupt's books. It was not shown that the bank had anything to do with the credit to Sheard in its account with the bankrupt or that it had any reason to believe that Sheard proposed to set off the payment to the bank against Sheard's indebtedness to the bankrupt. The adjudication in bankruptcy occurred on January 23, 1904. It was claimed that the transaction whereby Sheard received credit on the books of the bankrupt for its payment to the Herkimer Bank amounted to a voidable preference of that bank by the bankrupt; that "the bankrupt parted with property to the amount of the note and the bank received it and was benefited to that amount" to the detriment of the other creditors of the bankrupt.[11] It was held that the payment to the bank did not come from the bankrupt; that, in the transaction with the bank, Sheard acted on its own behalf; that Sheard had endorsed the note to the bank and received the proceeds of the discount; that Sheard's obligation as endorser was continued by the renewals, and on the last renewal Sheard furnished security of its own, later taking up the note with its own funds and receiving back its own collateral; that the bankrupt parted with nothing and the bank received the money of the endorser and redelivered to the endorser the note and collateral; that there was thus no depletion of the bankrupt's assets. The Court further held that, under the circumstances disclosed, the question of the right of Sheard to set off the amount of its payment to the bank against its indebtedness on the account due the bankrupt was distinct from the question whether the bank received a preference and that it would be only by the allowance of such a setoff that the bankrupt estate would be diminished. The Court did not decide, however, whether Sheard received a voidable preference by reason of the setoff.

■■ The facts in the Newport Bank case bear no resemblance to the facts in the instant case. There, Sheard became the endorser of the bankrupt's note, not within four months of bankruptcy but many months prior to bankruptcy; Sheard received the amount of the note when discounted; Sheard, not the bankrupt, provided the collateral security, and recovered its own collateral by paying the note with its own funds; the bankrupt parted with nothing at the time Sheard endorsed and discounted the note; the bank had no knowledge of Sheard's recovery from the bankrupt through its setoff arrangement and no reason to believe that it was, in any way, being given a preference under Section 60, sub. b of the Bankruptcy Act as then in effect (see footnote 11). In its opinion, however, the Supreme Court stated certain general principles which we consider applicable here, as follows:

"To constitute a preference, it is not necessary that the transfer be made directly to the creditor. It may be made to another, for his benefit. If the bankrupt has made a

---

11. We note the fact that at the time of the transactions involved in that decision, § 60, sub. b of the Bankruptcy Act provided as follows: "b. If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person * * *." Act of February 5, 1903, ch. 487, § 13, 32 Stat. 800.

transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it. A 'transfer' includes 'the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security.' * * * It is not the mere form or method of the transaction that the act condemns, but the appropriation by the insolvent debtor of a portion of his property to the payment of a creditor's claim, so that thereby the estate is depleted and the creditor obtains an advantage over other creditors. * * *" 225 U.S. page 184, 32 S.Ct. at page 635.

The case of Grandison v. National Bank of Commerce was decided by the District Court W.D.N.Y. in 1915, 220 F. 981. On appeal the same case is reported at 2 Cir., 1916, 231 F. 800. Certiorari was denied, 1916, 242 U.S. 644, 37 S.Ct. 213, 61 L.Ed. 542. No reference has been made to this case by counsel for any of the parties in briefs or argument.

In Grandison, a corporation, later to become a bankrupt, was the maker of certain notes payable to the defendant, National Bank of Commerce. The bank held by assignment, as collateral security for the payment of one or more of these notes, certain accounts receivable of the bankrupt. Other notes were unsecured and the bank was pressing for payment and for security. Within four months of the corporation's bankruptcy, its president, one Alexander, endorsed certain of these unsecured notes pursuant to an understanding that the corporation would assign to him certain of its accounts receivable to secure him as endorser. These accounts were accordingly assigned and as Alexander collected them he deposited the proceeds in the defendant bank in an account known as the "O. L. Alexander Collateral Account." Pursuant to Alexander's direc-

tion, the bank withdrew substantial amounts from this account and credited these amounts on the notes endorsed by Alexander. Under these facts, it was held that the payments to the bank through the endorser's account created voidable preferences. At 220 F. at pages 983 and 984, the District Court said:

"To constitute a preference it was not necessary that the assignment of the accounts receivable should be made directly to the bank. It was enough that the transaction which resulted in the indorsement of the renewal notes and the subsequent collection of the accounts receivable were for the benefit of the bank. Alexander concededly received the assignment of accounts from the bankrupt to secure him as an indorser on the overdue promissory notes held by the defendant. Such a transfer made by an insolvent falls within the prohibition of the Bankruptcy Act. * * *

* * * * * *

"It therefore makes no difference that the bankrupt paid the bank through the assignment to its president of the accounts receivable, as long as the arrangement resulted in disposing of the accounts receivable in such a way as to deplete the assets. The Bankruptcy Act does not forbid the taking of money by a bank in payment of a debt in the ordinary course of business, even if it should transpire that at the time of payment the debtor was insolvent; but in this case we are dealing with a different situation. Here, as said, the bank had reasonable cause to believe it was being favored, and nevertheless received payment of its debt, amounting to $15,216.90, by an arrangement made particularly for its benefit."

The District Court quoted with approval from the statement of general principles in National Bank of Newport v. National Herkimer County Bank, supra, to the effect that if a transfer of property is made by a bankrupt by which one cred-

itor obtains a greater percentage of his debt than others of the same class, circuity of arrangement will not avail to save it and, to constitute a preference, it is not necessary that the transfer be made directly to the creditor. In affirming the District Court, the Court of Appeals said: "That a 'transfer' of the property of the debtor was made is certain. That several transfers were made to Alexander, and through him to defendant, is not denied. It is not essential that the transfers should have been made directly to defendant. Any method of depleting an insolvent fund is sufficient." 231 F. 800, at page 803. As to defendant bank's collection of accounts receivable assigned directly to it as security by the bankrupt more than four months prior to bankruptcy, it was held that the bank received no preference.

In footnote 11 we have quoted Section 60, sub. b of the Bankruptcy Act as applicable to the transactions involved in National Bank of Newport v. National Herkimer County Bank, supra. Under § 60, sub. b as there quoted, in order that a preference might be avoided, it was necessary to show that the creditor had reasonable cause to believe that a preference would be effected by the transfer. Subsection b of Section 60 of the Act was amended in 1910 [12] and remained in the form in which enacted in 1910 until 1938. In 1938 the Chandler Act was passed, Section 60 of the Bankruptcy Act was completely overhauled and § 60, sub. b, in pertinent part, was enacted in the form shown in footnote 3. June 22, 1938, c. 575, § 1, 52 Stat. 869. Amendments subsequent to 1938 have made no changes in § 60, sub. b. Prior to the amendment

enacted in 1938, it was held that knowledge on the part of the creditor of his debtor's insolvency at the time of the preference was not always sufficient to show that the creditor had reasonable cause to believe that the transfer would effect a preference, since the creditor might honestly believe that the debtor, if he were allowed to continue in business, might pay his debts in full.

Subdivision b of Section 60 is the enforcing provision of that section; it confers the main source of power to avoid a preference as defined in Section 60, sub. a(1) of the Act. The only qualification on such power is contained within the provision itself, in that the creditor or his agent acting with reference thereto must have reasonable cause to believe the debtor insolvent at the time when the transfer is made. As was aptly pointed out in In re Sossaman, D.C. W.D.Ark.1941, 39 F.Supp. 113, 114, decided after the 1938 amendment of § 60, sub. b: "It is not necessary that a creditor know or have reasonable cause to believe that he is receiving a preference: (1) If he has reasonable cause to believe that the debtor is insolvent at the time of the transfer; (2) that the transfer was within four months prior to the filing by or against the bankrupt of a petition in bankruptcy; and (3) that by such transfer of property or money the creditor is enabled to obtain a greater percentage of his debt than some other creditor of the same class."

In a summarizing statement we shall set out particularly the principles which we believe should be applied as bearing upon Mrs. Aulick's claim. Clear-

12. Section 60, sub. b as amended in 1910: "b. If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer *then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference,* it shall be voidable by the trustee and he may recover the property or its value from such person. * * *" June 25, 1910, c. 412, § 11, 36 Stat. 842. (Emphasis supplied.)

ly, by the transactions here involved, Mrs. Aulick received a greater percentage of her antecedent debt than other creditors of the same class. Section 60, sub. b provides that a preferential transfer is voidable *if the transferee has reason to believe the transferor is insolvent.* There is no suggestion in the present act that the transferee must know also that the transfer must necessarily deplete the estate of the debtor. In National Bank of Newport v. National Herkimer County Bank, supra, it was decided, and in such a context quite logically and correctly, that the *payment* by an endorser does not result in a depletion of the assets or estate of the bankrupt debtor. However, if, within four months of bankruptcy, the endorsement must be procured or purchased by a pledge of assets, it cannot be said that the estate of the bankrupt has not been depleted, and for the benefit of the creditor receiving the security of the endorsement. There is obviously a depletion of assets if the insolvent debtor purchases the endorsement and secures or reimburses the endorser. As hereinbefore shown, preferences obtained by indirect or circuitous arrangements are to be struck down just as quickly as those obtained by direct arrangements. If the bankrupt had delivered the shares of stock directly to Mrs. Aulick as security for the payment of her antecedent debt, she would have received a voidable preference just as the transfer of the stock to Lemley to secure his $3,000 antecedent debt was a voidable preference. She cannot do indirectly what she could not do directly and destroy the protection intended and provided by § 60, sub. b for other creditors represented by the trustee in bankruptcy. By the transfer of the stock to Lemley, resulting in a depletion of assets, the bankrupt purchased Lemley's credit to the extent of $10,700, evidenced by Lemley's endorsement of a note for that amount, and it was the bankrupt who chose to use that credit to satisfy Mrs. Aulick who was then the most pressing creditor. It was she who received the benefit of the transaction, with knowledge of insolvency, and we conclude that all the essential elements of a voidable preferential transfer are present. To paraphrase the dictum in Dean v. Davis, supra, Mrs. Aulick, not Lemley, was preferred.

In holding that Mrs. Aulick received a voidable preference, however, it does not follow that she should be required to return to the trustee the entire amount received by her from Lemley as the result of the state court litigation. Equitable considerations should not be disregarded. Lemley endorsed the bankrupt's note knowing of debtor's insolvency and that ultimately he would be required to discharge his assumed liability. Lemley, as accommodation endorser, had no defense against Mrs. Aulick's demand that he satisfy his obligation to her. He had obtained security from the bankrupt upon which he was relying for his protection and it was his refusal to perform according to his contractual undertaking which resulted in litigation and the attendant court costs and attorney fees. That litigation fixed the rights of Mrs. Aulick as against Lemley in his capacity as accommodation endorser. A preferential transfer may be held voidable when attacked by the trustee in bankruptcy. In the absence of such attack, Mrs. Aulick's successful collection from Lemley would remain undisturbed, but the state court judgment does not determine the rights of the trustee against Mrs. Aulick.[13]

Since the costs and attorney fees incurred in the state court litigation were occasioned by Lemley's unwarranted and indefensible refusal to discharge his liability as endorser, it is inequitable that Mrs. Aulick be required to refund to Lemley, by payment to and through the trustee, such costs and fees. This loss,

13. Our only concern here is with the rights of the trustee against Lemley and Mrs. Aulick. Whether because of Lemley's endorsement, the ultimate liability for the $10,700 should be placed upon him, and not remain on Mrs. Aulick, we do not undertake to decide.

created by Lemley, should be borne by him.

The case will, therefore, be remanded to the District Court for modification of its decree. Mrs. Aulick shall be required to pay over to the trustee the sum of $10,700 with lawful interest thereon from January 8, 1960, the date of the filing of the trustee's petition against her. The trustee shall then pay over to Lemley the sum of $10,700 plus the amount of interest, and only that amount, which he shall recover from Mrs. Aulick. Simultaneously, upon receipt of such payment, Lemley shall assign, transfer and surrender unto the trustee the 158 shares of Frederick County Improvement Company stock. Mrs. Aulick shall be taxed with the costs of this proceeding incurred by reason of and subsequent to the filing of the trustee's petition against her. All other costs, incurred in the proceeding in the bankruptcy court by which the trustee attacked only the transactions with Lemley, shall be paid by the trustee from the bankrupt's estate.

Affirmed in part, reversed in part, and remanded.