224 F.2d 322
 GENERAL ELECTRIC CREDIT CORPORATION, Appellant,
v.
Marion J. DAVIS, Trustee for Gaither L. Lowery and Carl S. Lowery, Individually and T/A Lowery's TV and Appliance Center, Appellee.
 No. 6980.
 United States Court of Appeals Fourth Circuit.
 Argued May 27, 1955.
 Decided June 13, 1955.
 
 Arthur O. Cooke, Greensboro, N. C. (William Owen Cooke and Cooke & Cooke, Greensboro, N. C., on the brief), for appellant.
 W. Scott Buck, Winston-Salem, N. C., for appellee.
 Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 The trustee in bankruptcy for G. L. Lowery and C. S. Lowery, copartners trading as Lowery's TV and Appliance Center, filed a petition with the referee praying for an order directing the sale of certain goods in his possession free and clear of liens claimed by the General Electric Credit Corporation by virtue of certain trust receipts covering the goods which it held. The trustee asserted that the liens were invalid because they constituted voidable preferences in violation of § 60 of the Bankruptcy Act, as amended by the Act of March 18, 1950, 11 U.S.C.A. § 96. The statute defines a preference as a transfer of the property of the debtor while insolvent to or for the benefit of a creditor on account of an antecedent debt within four months before the filing of the petition in bankruptcy, the effect of which transfer will be to enable the creditor to obtain a greater percentage of his debt than some other creditor in the same class. A transfer of property, other than realty, is deemed to be made when it becomes so far perfected that no subsequent lien on the property can become superior to the right of the transferee; and if recording of an instrument is necessary to perfect the transfer, and the instrument is not recorded within 21 days after the transfer, then the transfer is deemed to be made at the time the recording is performed. Any preference may be voided if the creditor receiving it has at the time reasonable cause to believe that the debtor is insolvent.
 
 
 2
 There were two trust receipts in the pending case. One was dated November 12, 1953 for delivery of goods from November 13th to 16th, and was recorded on December 16, 1953. The balance due on this receipt is $280.65 and the value of the property covered thereby in the trustee's hands is $145. The second trust receipt was dated January 7, 1954, for delivery on the same day, and was recorded on February 16, 1954. The balance due on this receipt is $3,701.59 and the value of the property covered thereby in the trustee's hands is $2,500.
 
 
 3
 The copartners filed a voluntary petition in bankruptcy on March 29, 1954 praying that the partnership and each of the partners be adjudged bankrupt. Since both trust receipts were recorded more than 21 days after date, and less than four months before the petition in bankruptcy was filed, they were voidable upon the petition of the trustee if the partners were insolvent on the recording dates, and if the General Electric Credit Corporation had reason to believe that the partners were insolvent on these dates. The referee decided both issues in favor of the trustee and adjudged that the liens of the General Electric Credit Corporation were null and void, and ordered that the property be sold free from liens. The District Judge after hearing, approved and affirmed the order of the referee.
 
 
 4
 There are two questions to be decided on this appeal:
 
 
 5
 (1) does the evidence support the referee's finding that the bankrupts were insolvent at the time of the transfers, and
 
 
 6
 (2) did the appellant Credit Corporation then have reason to believe that they were insolvent.
 
 
 7
 The business venture of the partnership lasted approximately one year. Part of the merchandise was purchased from the General Electric Supply Company, a subsidiary of the Credit Corporation, and trust receipts were executed to it to secure the payment of goods delivered. The place of business was located in Winston-Salem, North Carolina, while the Credit Corporation did business in Greensboro, North Carolina. Twenty-four trust receipts, including the two in question, were executed by the bankrupts during the year they operated the business. The Credit Corporation also acted as a finance company for the bankrupts, buying conditional sales contracts taken by them from retail customers who purchased General Electric products as well as other makes of appliances. Approximately 85 per centum of the bankrupts' business involved conditional sales contracts, almost all of which were purchased by the Credit Corporation.
 
 
 8
 That the partners were insolvent when the trust receipts were recorded is not open to doubt. Both the partners testified that on December 16, 1953 and February 16, 1954, their total assets were worth less than $1,000 while they owed over $10,000 to creditors. During the few weeks preceding December 16, 1953, certain checks issued by the bankrupt were returned because of insufficient funds, and their source of credit with Wachovia Bank and Trust Company, Winston-Salem, North Carolina, had been discontinued by said bank prior to December 16.
 
 
 9
 The main contention of the Credit Corporation is that on the crucial dates, December 16, 1953 and February 16, 1954, it had no reason to believe that the bankrupts were insolvent. A representative of the Corporation testified that he felt the bankrupts were solvent on the dates in question. The Wachovia Bank and Trust Company on January 15, 1954, sent a letter to appellant stating that the bankrupts' credit was good, although the bank had previously discontinued credit to the firm. In March, 1954 the bankrupts sent to the Corporation a financial statement of their business, which it had requested in December, 1953. The statement indicated that the business was prospering and although it only reported conditions as of November 9, 1953, it implied that there had been no substantial change since that time. The bankrupts admitted that they did not want appellant to know about their bad financial condition. In addition, except in a few instances, the bankrupts were prompt in making payment both on the trust receipt transactions and on the conditional sales contracts.
 
 
 10
 This evidence gives some support to appellant's position, but on the other hand, there is substantial evidence which supports the finding of the referee. During November and December, 1953 all of the time sales of the firm were being purchased by the Credit Corporation and the firm was in great need of money to keep it going. The partners communicated this fact to the representative of the Credit Corporation and he suggested that perhaps the Credit Corporation should discontinue business relations with the bankrupt. Again in January, 1954 he said that if he had done so before Christmas, his Corporation would have been better off. Towards the end of 1953 and in 1954 the General Electric Credit Supply Company refused to fill the orders placed by the firm except those which called for old models. New models were refused.
 
 
 11
 Several times before and after December 16, 1953, the bankrupts asked appellant to hold checks until money could be deposited to cover them. One check for $361.63 was issued to appellant on November 17, 1953. It was returned by the bank for insufficient funds on November 27 and again on December 4. Another check for $1,168.94, issued to General Electric on December 3, was also returned due to insufficient funds. The bankrupts later made these checks good.
 
 
 12
 The Credit Corporation had ample opportunity to know the precarious condition of the business and the slenderness of its stock of goods because a representative of the corporation visited the place at least as often as every two weeks and on each visit checked the operations of the firm. From December, 1953 until February, 1954 the corporation tried without success to get a financial statement from the firm. At no time was unsecured credit extended to the firm. Indeed the entire course of dealings between the parties evinced a lack of confidence on the part of the corporation in the solvency of the firm. The finding of the court that the Credit Corporation had reasonable grounds to believe that the firm was insolvent on the crucial dates was not unjustified.
 
 
 13
 Affirmed.