Herschel A. **GENTRY**, Trustee in Bankruptcy of Estate of Shane Quality Jewelers, Inc.

v.

Alvin L. **BODAN**

v.

Thomas O. **PARKER**, Jr., and C. David Parish, Third-Party Defendants.

Civ. A. No. 14539.

United States District Court, W. D. Louisiana, Monroe Division.

Aug. 24, 1972.

James A. Hobbs, Jones, Blackwell, Chambliss, Hobbs & Henry, West Monroe, La., for plaintiff.

Robert Lee Curry III, Theus, Grisham, Davis & Leigh, Monroe, La., for defendant.

John C. Massey, West Monroe, La., for third-party defendants.

## OPINION ON THE MERITS

DAWKINS, Chief Judge.

This action is brought by the Trustee in Bankruptcy of Shane Quality Jewelers, Inc., to avoid an alleged preferential transfer made to Alvin Bodan. Plaintiff brought the action under Sections 60, 67 and 70 of the Bankruptcy Act (11 U.S.C. §§ 96, 107 and 110) to recover certain specified property transferred to defendant, Alvin Bodan, by the bankrupt, Shane Quality Jewelers, Inc., within four months prior to its filing a voluntary petition in Bankruptcy.

The story begins when the defendant landlord leased premises in Monroe, Louisiana, to Shane Quality Jewelers, Inc., for a term of ten years for a monthly rental of two hundred seventy-five dollars ($275.00) or six and one-half percent (6½%) of annual sales, whichever was greater. The lease was executed May 22, 1967, and rental payments began the month of September, 1967, when the structure was suitable for occupancy. To secure the rental payments, the lessor required the copartners, Thomas O. Parker, Jr., and C. David Parish, to bind themselves as sureties *in solido*. The lease restricted the use of the premises to the business of a jewelry store, including watch repair. The lease also contained an acceleration clause, to be triggered by any installment of rent which became delinquent. This provision provided that the lessor was obliged to give the lessee written notice by mail of the delinquent rent and unless payment was made within five (5) days of receipt of such notice the lessor could declare the balance of rent installments immediately due.

It is undisputed that the lessor, Bodan, knew that the corporation was in the process of filing a voluntary petition in bankruptcy at the time he accepted the specified property for cancellation of the lease.[1] Plaintiff's Exhibit No. 1 is the

---

1. Mr. Bodan testified, on Page 5 of the Transcript, that:

 " * * * To the best of my recollection they were going to have to close the business down. He was trying to avoid a bankruptcy * * *."

 Again, on Page 5, Mr. Bodan testified: "He was going under. He admitted it.

contractual agreement for cancellation of the lease. This agreement was executed May 17, 1968, just four days before Shane Quality Jewelers, Inc., was adjudicated as a bankrupt. Before this date, Bodan testified that he had trouble getting his rent almost every month. Also, at the time of the execution of the agreement for the cancellation of the lease there was a discussion with regard to Shane Quality Jewelers, Inc., entering bankruptcy, and prior to May 17, 1968, Bodan conversed with Parker, president of the bankrupt corporation, about the corporation entering bankruptcy.

The evidence also reflects that rent for the month of May, 1968, had not been paid to the lessor before the execution of the lease cancellation and this was the only past due rent. All previous payments had been made through April, 1968.

On May 17, 1968, Bodan and Parker, acting on behalf of Shane Quality Jewelers, Inc., entered into an agreement whereby the bankrupt transferred to the defendant all the merchandise and fixtures in the leased premises, plus $1500.00, in consideration of a release of liability for any past due or future rent due arising out of the contract of lease between the parties. This compromise also expressly released the two sureties under the lease, namely, Thomas O. Parker, Jr., and C. David Parish, from any further liability. The doors of the premises were closed for business on that date.

The voluntary bankruptcy was filed May 21, 1968, and Herschel A. Gentry was appointed Trustee. August 2, 1968, the Trustee in Bankruptcy mailed a letter to defendant demanding a return of the money and equipment transferred by the document dated May 17, 1968. The Trustee claimed the transfer was void as preferential under the terms of the Bankruptcy Act. The complaint was filed April 4, 1969. Defendant was granted leave to implead the bankrupt's president, Thomas A. Parker, and part-owner, David Parish.

In the event that Parker and Parish are liable to the third party plaintiff, they counterclaim against the Trustee for an amount of almost $10,000 which represents salaries allegedly due from the corporation.

In the pre-trial stipulation entered in this cause, the parties made the following admissions of fact:

a. Shane Quality Jewelers, Inc., was adjudicated a bankrupt by the United States District Court for the Western District of Louisiana May 21, 1968, and Herschel A. Gentry is the duly qualified and acting Trustee of said bankrupt estate;

b. Shane Quality Jewelers, Inc., the bankrupt, as aforesaid, was the Lessee of the defendant, Alvin L. Bodan;

c. Bodan and the bankrupt corporation entered into an agreement, a certified copy of which is attached to plaintiff's petition and which

---

When I went in there and looked at the stockroom there was empty boxes and I had trouble getting my rent every month. * * . * "

On Page 6 of the transcript, in response to questions on cross examination, Mr. Bodan testified:

"Q. You did know the corporation, Shane Quality Jewelers, was in financial difficulty?

A. I would have to feel it was because in the beginning I had trouble with it."

Under cross examination by the attorney for the bankrupt corporation, Mr. Bodan's testimony was to the effect that:

"Q. Were you at that time aware that if a petition in bankruptcy was filed on behalf of Shane Quality Jewelers that this interest could be subject to being set aside?

A. Yes."

Mr. Thomas O. Parker, Jr., president of the bankrupt corporation, testified on cross examination on Page 17 of the transcript that:

"Q. Was it definitely explained to Mr. Bodan the corporation was filing a bankruptcy proceeding?

A. Yes."

contains the agreement between the bankrupt corporation and defendant.

d. Bodan received the consideration recited in said release and the bankrupt corporation received the consideration recited therein.

■ It should be remembered that a preference granted to a creditor by the debtor is perfectly valid unless it is declared to be invalid by some statute. See 3 Collier, Bankruptcy, ¶60.02 (14 Ed. 1964), and authorities cited therein. Therefore, in order for a transfer to be invalid under the Bankruptcy Act, the Act itself must declare the transfer to be so or it must incorporate such law that declares the transfer void.

Section 60a of the Bankruptcy Act (11 U.S.C. § 96a) defines a preference which is unsuitable for the Act's intended purpose:

"(a) (1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Subsection (b) determines the condition which must be met in order for the trustee to avoid the transfer:

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property."

■ These two provisions establish the requirements which must be met be-fore a transaction is considered a preference which may be voidable: "If any one of the elements of a preference as enumerated in § 60a is wanting, there is no necessity of considering an avoidance of the transfer under § 60b, since a preference under the terms of § 60 itself has not been established." 3 Collier, *supra*, ¶60.02, at 759, citing General Electric Credit Corp. v. Davis, 224 F.2d 322 (4th Cir., 1955).

■■ The absence of any one of the requisite elements under § 60a(1) or 60b negates the existence of a preference. Bumb v. Valley Electric Co., 419 F.2d 107 (9th Cir. 1969); Thomas v. Gulfway Shopping Center, Inc., 320 F.Supp. 756 (S.D.Tex., 1970); 3 Collier, *supra*, ¶60.36 at p. 874. The burden is upon the trustee who seeks to avoid the transfer to show that each of these elements has been fulfilled. Bumb v. Valley Electric Co., *supra*; Moran Bros., Inc. v. Yinger, 323 F.2d 699 (10th Cir., 1963); Aulick v. Largent, 295 F.2d 41 (4th Cir., 1961); Republic National Bank of Dallas v. Vial, 232 F.2d 785 (5th Cir., 1956); Thomas v. Gulfway Shopping Center, Inc., *supra*; Holahan v. Gore, 278 F.Supp. 899 (E.D.La., 1968).

■ The defendant suggests that satisfaction of a statutory landlord's lien within four months prior to the filing of the petition in bankruptcy is an exception to the rule of voidable preferences. This is true if the lien is valid, for the policy of the Act is to allow secured creditors—those having liens upon specific property of the bankrupt—to have their claims satisfied first except where the intent of the Act clearly is to the contrary. Section 67b and c, as amended (11 U.S.C. § 107b and c).

"* * * The essence of a preference is that it depletes or diminishes the bankrupt's estate that is available to remaining creditors. Thus when a transfer neither depletes nor diminishes the estate that would otherwise be available for distribution to other creditors in a subsequent bankruptcy proceeding, no preferential transfer is

considered to have occurred. In the case of property being transferred for the cancellation of a lien which has not been invalidated or subordinated by the Act, so long as the value of the property subject to the lien at least equals the value of the property transferred [See, Dinkelspiel v. Weaver, 116 F.Supp. 455 (W.D.Ark.1953); 3 Collier, Bankruptcy Par. 60.22 (14 ed. 1964)] and so long as the value of the property transferred does not exceed the value of the lien being surrendered [See, Collier, Bankruptcy Par. 60.22 at 870–871 (14th ed. 1964); Waring v. Buchanan, Fed.Cas. No. 17,176 (D.C.N.Y.); Douglass v. Pugh, 177 F.Supp. 274 (E.D.Ky.1959), aff'd 6 Cir., 287 F.2d 500 (6th Cir. 1961)] no preferential transfer occurs for the assets available for other creditors are not being diminished. In such circumstances the bankrupt's assets were already encumbered by the creditor-transferee's enforceable lien which was of value at least as great as the amount being transferred. See, e. g., Virginia Nat'l Bank v. Woodson, 329 F.2d 836 (4th Cir. 1964); Aulick v. Largent, 295 F.2d 41 (4th Cir. 1961); Grubb v. General Contract Purchase Corp., 94 F.2d 70 (2d Cir. 1938); In re Perpall, 271 F. 466 (2d Cir. 1921); Collier, Bankruptcy Par. 60.22 (14th ed. 1964); 4 Remington, Bankruptcy Law (rev. ed. 1957).

"At least one, and possibly two of the essential elements comprising the definition of a § 60 preference are absent when the estate has not been so diminished or depleted.

"Some authority suggests that no 'transfer,' within the meaning of § 60(a)(1) has been made. See, Collier, Bankruptcy Par. 60.07 at 790–791 (14th ed. 1964). Although section 1(30) of the Act defines 'transfer' sweepingly as including 'the sale and every other different mode \* \* of disposing of or of parting with property or with an interest therein or with the possession thereof,' the requirement that there be a transfer of the debtor's property has

been judicially construed to require additionally that such transfer result in the depletion of the debtor's estate. See, e. g., Matter of Kentucky Book Mfg. Co., 30 F.Supp. 400 (W.D.Ky. 1939).

"The failure of such an exchange (of a debtor's property in consideration for the cancellation of a lien not invalidated or subordinated by the Act) to result in the depletion of the debtor's estate also removes the exchange from the meaning of 'for or on account of an antecedent debt'—the third requirement of section 60(a) (1). A transfer in consideration for which a lien which is not invalidated or subordinated by the Act is considered to be an exchange for a present consideration, rather than for a past consideration, or antecedent debt.

" 'A transfer for a present consideration cannot be preferential because the transferee is not being preferred over other creditors. In that situation there is no depletion or diminution of the estate. It follows that a substitution of property by property of equal value cannot be preferential because there is no diminution or depletion of the estate. A transfer made in satisfaction of an unassailable mortgage, pledge, trust receipt, mechanic's lien or other valid lien is supported by a present consideration where the property subject to lien is at least equal to the amount of the payment. Hence such a transfer cannot be preferential.' Seligson, Preferences Under the Bankruptcy Act, 15 Vand.L.Rev. 115, 120 (1961) (citations omitted). See, e. g., Collier, Bankruptcy Pars. 60.19, .20, .22 (14th ed. 1964) and the cases cited therein; Porter v. Searle, 228 F.2d 748, 750, 755–756 (10th Cir. 1955); Ricotta v. Burns Coal & Build. Supply Co., 264 F.2d 749 (2d Cir. 1959)." Thomas v. Gulfway Shopping Center, Inc., *supra*, 320 F.Supp. at pp. 762–763.

Therefore, in order to fall within the exception the lien must not be invalidated or subordinated by the Bankruptcy

Act. The status of the landlord's lien under the Act has been altered by the amendments in July, 1966, to Section 67. Pub.L. 89–495, 80 Stat. 268 (1966). Prior to 1966, the former § 67b provided that statutory liens in favor of landlords were valid against the trustee even though arising or perfected while the debtor was insolvent and within four months prior to filing the bankruptcy petition. These liens were not invalidated by the Act unless they were statutory and unless they were not accompanied by possession, levy, sequestration or distraint. Section 67c(2) (11 U.S.C. § 107c(2); Thomas v. Gulfway Shopping Center, Inc., *supra*. However, § 67c provided that all statutory liens on personalty not accompanied by possession and all liens of distress for rent would be subordinated to the payment of debts entitled to priority of payment under § 64a(1) and (2). When subordinated, the liens are restricted in the amount of the payment as provided by § 64a(5). Thus landlords' liens not falling within these provisions of 67c and not preferential or fraudulent could have been enforced against the property. 4 Collier, *supra*, ¶67.23 and authorities cited therein.

Under the new § 67c, landlords' liens are expressly invalidated, and thus the express provision in former § 67b was deleted from the enumeration. "There is no qualification for validity, subordination, or restriction based upon the nature of the property, solvency of the estate, possession, sequestration, levy, distraint, or the like. The only real qualification to which invalidity of the rent lien is subject is where the rent lien was enforced by sale prior to the filing of a petition under the Bankruptcy Act. In the absence of any such sale, as mentioned, the rent lien is invalidated." 4 Collier, *supra*, at p. 290.[2] How-

2. Section 67 as amended:

 \* \* \* \* \*

 (b) The provisions of section 96 of this title to the contrary notwithstanding and except as otherwise provided in subdivision (c) of this section, statutory liens in favor of employees, contractors, mechanics, or any other class of persons, and statutory liens for taxes and debts owing to the United States or to any State or any subdivision thereof, created or recognized by the laws of the United States or any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition initiating a proceeding under this title by or against him.

 (c) (1) The following liens shall be invalid against the trustee:

 (A) every statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property, or upon execution against his property levied at the instance of one other than the lienor;

 (B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists: *Provided*, That where a statutory lien is not invalid at the date of the bankruptcy against the trustee under subdivision (c) of section 110 of this title and is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, such a lien may nevertheless be valid under this subdivision if perfected within the time permitted by and in accordance with the requirements of such law: *And provided further*, That if applicable lien law requires a lien valid against the trustee under section 110(c) of this title to be perfected by the seizure of property, it shall instead be perfected as permitted by this subdivision by filing notice thereof with the court;

 (C) every statutory lien for rent and every lien of distress for rent, whether statutory or not. A right of distress for rent which creates a security interest in property shall be deemed a lien for the purposes of this subdivision.

 (2) The court may, on due notice, order any of the aforesaid liens invalidated against the trustee to be preserved for the benefit of the estate and in that event the lien shall pass to the trustee. A lien not preserved for the benefit of the estate but invalidated against the trustee shall be invalid as against all liens indefeasible in bankruptcy, so as to have the effect of promoting liens indefeasible in bankruptcy which would otherwise be subordinate to such invalidated lien. Claims for wages, taxes,

ever, the invalidated lien is entitled to a fifth priority under § 64a(5) with reference to which it must be perfected according to state law.

 It is state law that determines the nature of the privilege, but the Bankruptcy Act determines whether the privilege is secured or not. Halpert v. Industrial Commissioner of State of New York, 147 F.2d 375 (2d Cir. 1945); New Orleans v. Harrell, 134 F.2d 399 (5th Cir. 1943); Brown Shoe Co. v. Wynne, 281 F. 807 (5th Cir. 1922); Norris v. Trenholm, 209 F. 827 (5th Cir. 1913); In re Trahan, 283 F.Supp. 620 (W.D.La.1968), aff'd 402 F.2d 796 (5 Cir.), cert. denied, Bernard v. Beneficial Finance Co., 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459; 4 Collier, *supra*, ¶ 67.20[2]. The Louisiana Civil Code designates the landlord's rights as a pledge or privilege. L.S.A.—Civil Code Articles 2705 and 3218. "The nature of privilege though different from that of the *common law lien,* is close to that of a statutory lien; the concepts being similar, the words are often used interchangeably." In re Trahan, *supra,* 283 F.Supp. p. 623. The Louisiana lessor's

privilege has been recognized as a statutory lien in bankruptcy proceedings. Marshall v. Knox, 83 U.S. 551, 21 L.Ed. 481 (1872); Odendahl v. Pokorny Realty Co., 76 F.2d 271 (5th Cir. 1935); Lerner Stores Corp. v. Electric Maid Bake Shops, 24 F.2d 780 (5th Cir. 1928); Fudickar v. Glenn, 237 F. 808 (5th Cir. 1916); In re Meyer & Bleuler, 195 F. 653 (E.D.La.1912).

A careful reading of the lease discloses no contractually conferred lien [3] so the effect of that particular device will not be considered, and § 67c of the Bankruptcy Act (11 U.S.C. § 107c) would invalidate the landlord's privilege even though accompanied by possession, levy, sequestration or distraint rather than merely being subordinated to the first two priorities (taxes and wages) of § 64a and restricted in amount to the past three months' rent due and owing.

██ It is therefore concluded that the consideration given to terminate an invalid lien is not protected by the exception from § 60 created for the pre-bankruptcy satisfaction of valid and enforceable liens, and thus would be sub-

and rent secured by liens hereby invalidated or preserved shall be respectively allowable with priority and restricted as are debts therefor entitled to priority under clauses (2), (4), and (5) of subdivision (a) of section 104 of this title, even though not otherwise granted priority.

(3) Every tax lien on personal property not accompanied by possession shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision (a) of section 104 of this title. Where such a tax lien is prior in right to liens indefeasible in bankruptcy, the court shall order payment from the proceeds derived from the sale of the personal property to which the tax lien attaches, less the actual cost of that sale, of an amount not in excess of the tax lien, to the debts specified in clauses (1) and (2) of subdivision (a) of section 104 of this title. If the amount realized from the sale exceeds the total of such debts, after allowing for prior indefeasible liens and the cost of the sale, the excess up to the amount of the difference between the total paid to the debts specified in clauses (1) and (2) of subdivision (a) of section 104

of this title and the amount of the tax lien, is to be paid to the holder of the tax lien.

(4) Where a penalty not allowable under subdivision (j) of section 93 of this title is secured by a lien, the portion of the lien securing such penalty shall not be eligible for preservation under this subdivision.

(5) This subdivision shall not apply to liens enforced by sale before the filing of the petition, nor to liens against property set aside to the bankrupt as exempt, nor to liens against property abandoned by the trustee or unadministered in bankruptcy for any reason and shall not apply in proceedings under section 205 of this title, nor in proceedings under chapter 10 of this title unless an order has been entered directing that bankruptcy be proceeded with. As amended July 5, 1966, Pub.L. 89–495, §§ 3, 4, 80 Stat. 268.

3. See Thomas v. Gulfway Shopping Center, Inc., 320 F.Supp. 756, 766 (S.D.Tex. 1970), where the Court concluded that "the contractual landlord's lien is no more invalidated now than it was prior to the 1966 amendments."

ject to the various tests for preferential transfers. The question then becomes whether or not this transfer is for or on account of an antecedent debt. For the moment, the other requirements of § 60 will be considered as having been proven because if any one element is lacking there can be no preference.

The consideration given for rent is the right to occupy the premises. If the right to occupy terminates, then the obligation to pay rent ceases, and no debt is created until the time stipulated for the payment arrives. Standard Oil Co. of New Jersey v. Elliott, 80 F.2d 158 (4th Cir. 1935); In re Roth & Appel, 181 F. 667, 669 (2d Cir. 1910). Therefore, if one is obligated to pay rent in the future, the debt does not arise until the time for payment arrives.[4] Thus the agreement to cancel the lease and relieve the bankrupt from paying future rent was not a pre-existing debt except to the extent rent was due. In this case, one month's rent was due and this was the only antecedent debt owed defendant because that given which was in excess of past-due rent was not an antecedent debt but a present consideration. Thomas v. Gulfway Shopping Center, Inc., *supra*. Therefore, this transfer is voidable as a preference only to the extent of the antecedent debt and not as to the part which is considered as present consideration. Aulick v. Largent, 295 F.2d 41 (4th Cir. 1961) and authorities cited therein.

It is concluded that the past rent due is not removed from the operation of § 60 by reason of the judicially created exception from § 60 for the pre-bankruptcy cancellation of liens enforceable in bankruptcy because of the 1966 amendments to § 67, and it is also concluded that the past rent due falls within the definition of a preferential transfer. The past-due rent is for the sum of $275, and this transaction complies with the requirements of § 60 to that extent: it is a transfer of the debtor's property (jewelry, fixtures, and money),[5] to a creditor (lessor), for or on account of an antecedent debt ($275 rental due), made within four months before the filing of the petition in bankruptcy (the cancellation was perfected four days before this occurrence), the effect of which transfer enables such creditor to obtain a greater percentage of his debt than some other creditor of the same class (*infra*), and the creditor knew or had reasonable cause at the time the transfer was made to believe that the debtor was insolvent (the evidence reflects that Bodan actually knew and was informed that Shane Quality Jewelers, Inc., was going to enter bankruptcy very soon after the transfer).[6] There is only doubt as to one requirement listed above and that is whether the creditor would obtain a greater percentage than some other creditors of the same class. Since new § 67c invalidates the lessor's lien he is no longer a secured creditor, but an unsecured creditor, and by receiving the amount of past-due rent he would be receiving a greater percentage than other unsecured creditors. This amount should then go into the fund in order to

---

4. As previously stated in the facts, the lease contained an acceleration clause. This clause required the lessor to give the lessee written notice by certified mail that the rent was unpaid and delinquent. From date of this notice, the lessee had five (5) days within which to pay the delinquent rent and only after his failure to pay within this period was the lessor allowed to accelerate the balance of the rent installments. There is nothing in the transcript or any exhibits that indicates the lessor ever exercised his option, in any manner, to accelerate future rent. Therefore, the balance of the rent was not due when the cancellation was executed, and consequently it could not have been an antecedent debt.

5. The $1500 was paid by a cashier's check obtained by a check written on the checking account of the bankrupt. This reflects that the money was the property of the bankrupt and not the guarantors' property. Nor was there any evidence introduced to show that the money belonged to the guarantors and was given for their release only.

6. See note 1 *supra*.

pay those creditors with a higher priority than that of the landlord who would now be in the fifth priority. 3 Collier, *supra*, ¶60.34.

In the event the lessor does not receive compensation for the past-due rent upon distribution of the fund considering his fifth priority, the Court is of opinion that the defendant has no valid claim against Thomas Parker or David Parish. These two men were simply sureties for payment of the rent. Bodan not only released his debtor from the obligation to pay rent, but he also released the sureties from any obligation they had to pay in the event the debtor did not pay. L.S.A.—Civil Code Article 3062:

> "The voluntary acceptance on the part of the creditor, of an immovable or any other property, in payment of the principal debt, is a full discharge of the surety, even in case the creditor should be afterwards evicted from the property so accepted."

Defendant is therefore entitled to judgment accordingly. It is hereby ordered, adjudged and decreed that judgment be entered for defendant with costs. Counsel for defendant should prepare an appropriate decree in accordance with Rule 9(e) of the Western District of Louisiana.